## LEWIS LEY v. HANS H. MILLER.

[FILED FEBRUARY 25, 1890.]

**Parties:** DAMAGES: CONTRACT TO PAY ANOTHER'S DEBT. H.
H. M. being holden for the debts of the late firm of M. & M.,
for which he held a chattel mortgage upon the property of C. F.
M., L. L. entered into an agreement with H. H. M. that, on con-
sideration that he would release the said chattel mortgage, he
would assume and pay off the indebtedness of said firm, which
said indebtedness included the debt of one C. R. The chattel
mortgage having been released, L. L. failed to pay the debt of
C. R. In an action brought by H. H. M. against L. L., on said
agreement, *held*, that the contract having been made with H. H.
M. for the benefit of C. R., the action could be maintained in
the name of H. H. M., and that the measure of damages was
the amount of said debt of C. R. remaining unpaid.

ERROR to the district court for Madison county. Tried
below before POWERS, J.

*H. C. Brome,* for plaintiff in error.

*D. A. Holmes, contra.*

COBB, CH. J.

The plaintiff below brought his action in the district court
alleging that in December, 1885, Charles F. Mueller and
himself were doing business in Norfolk, in Madison county,
under the partnership firm of Mueller & Miller, which
had then terminated, the partner continuing to carry on
the business and assuming all the liabilities of the late
partnership; that for the purpose of securing the plaintiff
against such partnership liabilities Mueller executed a chat-
tel mortgage covering certain horses, wagon, cattle, and
other property sufficient to secure the plaintiff; that on
January 6, 1886, Mueller having failed to comply with the
conditions of the mortgage, and pay certain firm liabilities,

the plaintiff took possession of the property in order to sell the same and satisfy the indebtedness; that on the same day the defendant, to procure the release of the property, entered into the following stipulation:

"Agreement made and entered into by and between Hans H. Miller and Lewis Ley, witnesseth: That whereas said first party is holden for the debts of the firm of Mueller & Miller, lately doing business in Norfolk, Neb., and whereas said party now has a chattel mortgage against Charles F. Mueller to secure him, the said first party, for the payment of said indebtedness: Now, therefore, said first party, in consideration of one dollar, and upon further consideration that the said secured party will assume and pay off the indebtedness of said firm:

" To the Chicago Lumber Co., of about............ $20 00
"To C. Shenberg & Co., of about.................... 57 00
"To Prescott, of Sioux City, of about.............. 21 00
"To C. Rudat, of about................................ 150 00

" It being understood that the claims of the above parties are to be paid in full by said second party, hereby agrees to release a certain chattel mortgage given to him by said Charles F. Mueller and to deliver up possession to him of certain personal property taken thereunder.

"Dated Jan. 6th, 1886.               Lewis Ley."

That by reason of the agreement the plaintiff released the mortgage and restored the property to the defendant; that at that time among other liabilities of the late firm was a balance of $125 on two promissory notes in favor of Charles Rudat, which the defendant had neglected, and still refuses, to pay; that on April 16, 1886, Rudat recovevered judgment against Miller for $166.43 on said notes, before A. Sattler, Esq., a justice of the peace of said county, which is wholly unsatisfied, and which the defendant refused to pay—praying judgment on these premises against the defendant for $199.

The defendant answered, admitting the stipulation set forth, but denying that the plaintiff had a beneficial interest therein, and averring that he was not the real party in interest in this suit, but that Rudat was the beneficiary of said agreement; that the plaintiff now is, and since the execution of the agreement has at all times been, wholly insolvent; and further setting up a payment to Rudat of $75 on his claim, and a tender of the balance due him, and of his refusal to receive it.

Upon these issues there was a trial to the court without a jury, and judgment for the plaintiff for $186.20.

The defendant's motion for a new trial was overruled, and exceptions being taken, he filed his petition in error in this court.

The first question presented in the brief of counsel arises upon the proposition that there being no reply in the pleadings, the matter set up in the answer must be taken as true.

There was a suggestion of a diminution of the record filed in this court by defendant in error, and a motion for leave to supply the record of the filing of a reply. This motion was supported by an affidavit of counsel for defendant in error and resisted by a counter-affidavit of counsel for plaintiff in error. It does not appear by the court records that any ruling was made on this motion; but there appears in the record a certificate from the district judge that upon the trial of the cause in the district court the new matter set up in the answer was treated as denied by a reply. It is quite doubtful what, if any, weight can be given to this certificate. It is not an amendment of the record proper, as that could only be made by the clerk of the district court; nor can it be treated as a supplement to the bill of exceptions. But upon an examination it is doubted that any new matter was set up requiring a reply. The allegation that the plaintiff is not, or that Charles Dudat is the real party plaintiff in interest, is not a question of fact but one of law, arising upon the petition and

answer.   Although the allegation that the plaintiff was
insolvent seeks to raise a question of fact, such fact was
not relevant.   The allegations of payment and tender to
Charles Dudat were not relevant, unless considered in con-
nection with an application on the part of the defendant,
or the said Dudat, that he be made a party in the case either
by intervention or otherwise.   It is believed that the rights
of the parties can be ascertained from the record as it now
stands, and a fair measure of justice awarded them without
the application of technical rules.

But, in the first place, I will say in reply to the posi-
tion of plaintiff in error, as taken in the brief, as well as in
his answer in the court below, that the plaintiff cannot
maintain his action because he is not the real party in inter-
est.   It is true the statute provides, in section 29 of the
Code, that "every action must be prosecuted in the name of
the real party in interest," but said section also contains
the following, "except as otherwise provided in section 32."
Section 32 provides as follows: "A person with whom, or
in whose name a contract is made for the benefit of an-
other,    *    *    *    may bring an action without joining
with him the person for whose benefit it is prosecuted."
This provision of the Code is believed to be entirely appli-
cable to and conclusive of the point raised.   Moreover,
such is believed to have been the law before the adoption
of the Code, and it is so held in many states without refer-
ence to special statutory provisions.   (See cases cited by
counsel for defendant in error; also, *Carter v. Adamson*, 21
Ark., 287, and cases cited in that opinion.)

The case of *Wilson v. Stilwell*, 9 Oh. St., 467, is quite in
point.   In that case, Stillwell and one Tooker were carry-
ing on a partnership business, and were owing certain
debts; Stilwell retired from the firm and Tooker, with Wil-
son as his surety, entered into a bond with him conditioned
for the faithful payment of the debts of the firm.   Tooker
failed to pay all the debts of the firm, but certain of them

were left unpaid, and for which Stilwell sued Tooker and Wilson on the bond. He also made the creditors, whose claims remained unpaid, defendants. Tooker made default, but Wilson answered, and judgment being rendered against him in the superior court of Cincinnati, he took error to the supreme court. In the opinion the court held, that the phrase "settle up and liquidate" in the condition of the bond, taken in connection with the accompanying recital, is equivalent to the word *pay*, and imposes the obligation to *pay* all the debts of the late firm of J. M. Tooker & Co., and is readily distinguishable from an obligation to indemnify against a liability. That while it is settled "that if there be a contract to indemnify, simply and nothing more, then damage must be shown before the party indemnified is entitled to recover; but if there be an affirmative contract to do a certain act, or to pay a certain sum or sums of money, then it is no defense to say that the plaintiff has not been damnified; and that the measure of damages, in such case, is the amount agreed to be paid," etc. In that case the unpaid creditors of J. M. Tooker & Co., having been made parties, and having answered, the penalty of the bond was directed to be paid directly to them, to the extent of their claims. And in this case, had Rudat been made a party, or had he intervened, the recovery would have been by him directly, and doubtless upon an application in the district court, with a showing that he is still the owner and holder of the claim against Miller, the judgment will be directed to be paid to him.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.