**NISSHO–IWAI CO., LTD., Plaintiff-Appellee,**

v.

**STAR BULK SHIPPING CO. and Buchanan Shipping Co., Defendants-Appellants.**

**NISSHO–IWAI CO., LTD., Plaintiff-Appellee,**

v.

**AMERICAN MAIL LINE LTD., Defendant-Appellant.**

Nos. 73–3171, 73–3158.

United States Court of Appeals, Ninth Circuit.

June 11, 1974.

David M. Salentine (argued), Bogle, Gates, Dobrin, Wakefield & Long, Seattle, Wash., for defendants-appellants.

Dwight L. Guy (argued), Detels, Draper & Marinkovich, Seattle, Wash., for plaintiff-appellee.

Before MERRILL and WALLACE, Circuit Judges, and BURNS,* District Judge.

## OPINION

PER CURIAM.

Four substantially similar and consolidated maritime claims for cargo damage were brought by Nissho-Iwai Co., Ltd. (Nissho) as consignee against appellants Star Bulk Shipping Co., A/S, owner of, and Buchanan Shipping Co., charterer of, the M.S. Star Clipper and appellant American Mail Line Ltd., owner of the S.S. Indian Oregon Mail. The appeal was taken from a judgment in favor of Nissho for damages to cargo and for costs of a unilateral survey. We affirm the former but reverse the award for the survey fee.

Appellants contracted to carry cargo to Japan. The cargo was carried to the Japanese ports of discharge and delivered to Nissho. There, the cargo was discharged from the vessels into lighters or barges hired by Nissho. At the time of discharge to Nissho's lighters, two sets of cargo checkers were aboard each ship: A.N.C.C. acting for Nissho and J. C.T.C. acting for the carriers. The A. N.C.C. and J.C.T.C. checkers tallied the cargo being discharged and checked its condition. Both sets of checkers prepared cargo boat notes listing the amount of cargo discharged to Nissho's lighters and the condition of the cargo. The pairs of boat notes contain the same tally. Thereafter, Nissho arranged to have the lighters towed away and at a later date or dates, Nissho arranged to have the cargo landed at one or more shoreside warehouses. After the landing, Nissho's warehouseman appointed a surveyor, N.K.K.K., to survey the cargo. The latter survey showed substantially greater cargo damage than the joint survey. The district court relied on the N.K.K.K. survey and assessed the survey fee to appellants.

Four questions are presented by appellants. Relying on United States v. El Paso Natural Gas Co., 376 U.S. 651, 657, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964), they argue that the trial court's findings and conclusions must be rejected because they were mechanically adopted and "do not reveal the discerning line for decision of the basic issues in the case." They contend that "[t]he practice of announcing a general decision in favor of one party and then turning over the fact-finding to that party's counsel is not to be approved," and cite a footnote in *El Paso Gas. Id.* at 657 n. 4, 84 S.Ct. at 1047. That foot-

---

* Honorable James M. Burns, United States District Judge, District of Oregon, sitting by designation.

note contains a suggestion made by a judge at a seminar to the effect that judges delegating the initial draft of findings to a party should not abdicate their judicial responsibility to make sure that the ultimate findings comport with the judges' actual determinations. Nor do we believe that Rincon Band of Mission Indians v. County of San Diego, 495 F.2d 1, 11 (9th Cir. 1974), states anything more illuminating. We are aware that busy judges sometimes request attorneys to prepare the first draft of proposed findings and conclusions. The vice is when the district judge fails to study them and make such changes as are necessary to be sure they reflect his opinion.

But if appellants are correct that the district judge failed to make necessary modifications, we still would have to conclude, as did the Supreme Court in *El Paso Gas,* that such "findings, though not the product of the workings of the district judge's mind, are formally his; they are not to be rejected out-of-hand, and they will stand if supported by evidence." 376 U.S. at 656, 84 S.Ct. at 1047. The findings in this case are supported by evidence.

■ Next, appellants argue that the findings of fact are clearly erroneous because they were based on the N.K.K.K. "secret survey and completely disregarded the A.N.C.C. and J.C.T.C. joint survey. They contend that a presumption exists that "secret surveys" are to be viewed with utmost suspicion. Therefore, they argue that because such a "secret survey" is the basis for the findings of fact, the findings are clearly erroneous. Although the joint check had the benefit of mutual observation, it was limited by the extent of observation as the cargo came overhead in slings. The subsequent survey does not have the mutual observation but there was a greater opportunity for detailed analysis of damage. Given the two, we cannot say the trial judge must accept the former as a matter of law nor that the acceptance of the latter was clearly erroneous.

■ Third, appellants wish us to draw an inference because Nissho did not call and depose A.N.C.C. employees. That argument could have been addressed to the trial judge at the time he decided the merits of the case. Its existence does not make the findings clearly erroneous.

■ Finally, appellants raise the issue of the assessment of survey fees against them. They are correct in stating that the law requires, before survey fees can be awarded to one party, that notice of the survey be given to the other party and that the other party be given a chance to attend the survey. It does not appear that appellants were given sufficient notice and, therefore, the judgment should be reduced by the amount of the N.K.K.K. survey fee. The notice which was given would not alert appellants that a survey was to be undertaken, merely that a claim was to be made. Appellants could properly assume that the claim would be based upon the off-loading check and they were under no duty to make further inquiry. If Nissho wanted to be sure of reimbursement, it should have given specific notice.

Affirmed in part; reversed in part.