UNION BANK, a California Corporation, Plaintiff-Appellee,

v.

WINNEBAGO INDUSTRIES, INC., an Iowa Corporation, Defendant-Appellant.

No. 74–2784.

United States Court of Appeals, Ninth Circuit.

Nov. 24, 1975.

Franklin H. Wilson (argued), McCutchen, Black, Verleger & Shea, Los Angeles, Cal., for defendant-appellant.

Stanley W. Kesselman (argued), Foonberg & Frandzel, Beverly Hills, Cal., for plaintiff-appellee.

## OPINION

Before WRIGHT and WALLACE, Circuit Judges, and POWELL,* District Judge.

WALLACE, Circuit Judge.

Union Bank, a California corporation, filed suit in the Los Angeles County Superior Court against Winnebago Industries, Inc. (Winnebago), an Iowa corporation, on a contract claim. Based upon diversity of citizenship, Winnebago removed the action to federal district court pursuant to 28 U.S.C. § 1441. The district court thereafter granted a motion for summary judgment for Union Bank and, in addition, awarded attorney's fees based upon a finding of bad faith by Winnebago. We affirm the granting of the summary judgment; we reverse the award of attorney's fees.

Winnebago is a manufacturer and wholesale distributor of recreational motor vehicles. It sells these vehicles through franchised retail dealers who often finance their inventory by "flooring" arrangements with lending institutions. A flooring arrangement is an extension of credit between a bank and a dealer. The dealer orders and receives vehicles from the manufacturer; the manufacturer's invoice is paid directly by the bank and the dealer repays this amount plus interest to the bank upon reselling the vehicle at retail.

Prior to 1972, Winnebago experienced increasing sales of its recreational vehicles and sought to induce financial institutions to enter into flooring arrangements with Winnebago's retail dealerships. Accordingly, it prepared a form document entitled "Repurchase Agreement" in which Winnebago promised to repurchase certain vehicles from the fi-

---

* Honorable Charles L. Powell, United States District Judge, Eastern District of Washington, sitting by designation, heard the arguments in this case but died before the Opinion was filed.

However, he had concurred in the result of the Opinion pertaining to the summary judgment issue.

nancial institution at a specified price if the dealer defaulted under the flooring arrangement. The only express conditions precedent in the contract were the dealer's default and the bank's notice and demand for repurchase.

In September, 1972, Winnebago executed a standard repurchase agreement in favor of Union Bank.[1] This agreement was part of a flooring arrangement between Union Bank and Winnebago World of Lomita, a franchised retail dealer of Winnebago's recreational motor vehicles. On November 30, 1973, Union Bank notified Winnebago that the dealer had defaulted under the terms of the flooring agreement and demanded that Winnebago repurchase the vehicles floored by the bank. Winnebago responded on December 6, conditioning its repurchase under the contract on the bank's prior submission of proof of the dealer's default, an accounting of monies previously received by the bank and assignment of the bank's rights and remedies against the dealer and against individuals who had personally guaranteed the corporate dealer's indebtedness. Union Bank rejected these conditions, filed a suit for the amount alleged to be due

under the repurchase agreement and proceeded to liquidate the vehicle inventory, holding Winnebago liable for any deficiency between the specified repurchase price and the proceeds of liquidation.

In the civil action the bank moved for summary judgment. In opposition, Winnebago contended that Union Bank must first proceed directly against Winnebago World of Lomita, the retail dealer, for any deficiency owed the bank. The district court granted summary judgment for the .bank. Upon a motion to reconsider, Winnebago offered affidavits alleging an intention on the part of its counsel and contracting officer to create a guaranty relationship in the drafting and execution of its standard form repurchase agreement. The court rejected the motion for reconsideration and amended findings of fact and conclusions of law were filed after the hearing.

Winnebago contends that pursuant to the repurchase agreement, it was a guarantor or surety. *See* Cal.Civ.Code, § 2787. If so, Winnebago would be entitled to the protections afforded by several California statutory provisions. For

1. The relevant portion of the contract provides:

1. For and in consideration of your extending a wholesale line of credit to Winnebago World of Lomita, California (hereinafter referred to as "Dealer") for the purpose of enabling Dealer to purchase from us, Winnebago Motor Homes, Travel Trailers, and/or Camper Coaches, (hereinafter referred to as "Vehicles") manufactured by us, we promise and agree that in the event of Dealer's default under any such instrument evidencing or securing the extension of credit by you for Dealer's purchase of Vehicles from us, we will, upon demand, repurchase any Vehicles so Floor Planned by you as herein provided.
2. Our agreement to repurchase is limited in amount, as to each Vehicle, to a sum not exceeding 100% of our invoice price including freight charges but excluding the "Holdback Amount" for the first six (6) months and 90% for an additional six (6) months from the original date of payment to Winnebago which shall be the factory selling price in effect for all dealers at the date any such vehicle is shipped to the dealer.

\* \* \* \* \* \*

5. We will repurchase such new Vehicles in your possession or control in their then location for the unpaid principal balance excluding any accrued interest or charges owing by Dealer on such Vehicles to you. For clarity, this agreement applies only to new Vehicles, the term "new Vehicles" shall mean vehicles sold to the Dealer by us which have not been sold or leased by the Dealer and have not been used by the Dealer for any purpose other than display, demonstration and to other ordinary uses preliminary to the sale thereof.

\* \* \* \* \* \*

8. In the event we fail to repurchase within thirty (30) days after your written request any such Vehicles as herein agreed, you may, at your option, sell such Vehicles at public or private sale, with or without notice to us. After the net proceeds of such sale or sales have been applied to the unpaid principal balance owing on the Vehicles sold, we promise to pay, upon demand, any deficiency.

example, it may require the creditor to proceed against the principal, "or to pursue any other remedy in his power which the surety cannot himself pursue." Cal. Civ.Code § 2845. It would also be entitled to the benefit of every security for the performance of the principal obligation held ·by the creditor. Cal.Civ.Code § 2849. Thus, Winnebago contends that the bank's refusal to proceed first against the principal debtor, Winnebago World of Lomita, or to assign other personal guarantees of the corporate principal's obligation, acted to exonerate Winnebago's duty to repurchase the vehicles under its contract with Union Bank. *See* Cal.Civ.Code §§ 2819, 2845.

 The district court determined that Winnebago's contract was not a guaranty but simply a promise to repurchase the vehicles upon the dealer's default, "enforceable according to its terms without reference to principles of guarantee or suretyship." In this the district court was correct.

The express terms of the agreement are clear pertaining to the parties' duties and bear no intimation of any guaranty or surety relationship. Winnebago urges, however, that the agreement is ambiguous when viewed in light of the tripartite financing arrangement described above and that we are bound to consider such contextual background evidence, citing *Pacific Gas & Electric Co. v. G. W. Thomas Drayage & Rigging Co., Inc.,* 69 Cal.2d 33, 69 Cal.Rptr. 561, 442 P.2d 641 (1968). Under *Pacific Gas,* extrinsic evidence may be offered to explain a contract if the evidence is relevant to prove a meaning of which the terms of the instrument are reasonably susceptible. 69 Cal.2d at 37, 40, 69 Cal.Rptr. at 564, 566, 442 P.2d at 644, 646. However, even when the repurchase agreement is construed in the context of the financial setting described by Winnebago, a guaranty construction is not reasonably susceptible.

The manifest purpose of the repurchase agreement was to induce additional extensions of credit to Winnebago's retail dealers, enabling them to increase their inventories of Winnebago recreational vehicles. Further, the agreement affords the lending institution a quick and relatively easy method for disposing of the floored inventory at a specified price. If the bank chooses to exercise this option, the dealer is benefited by decreasing any potential amount due the bank upon liquidation of the inventory after default—thus providing additional encouragement to the dealer to expand his inventory of vehicles. In fact, clause 8 of the agreement provides that if Winnebago fails to repurchase after demand, Winnebago will pay any deficiency between repurchase price and net proceeds from the bank's public or private sale. See footnote 1, *ante.* Winnebago cannot now complain that the bank is unfairly shifting a portion of the loan deficiency from the dealer to Winnebago since that result is contemplated by the agreement and was part of the inducement for the extension of credit.

Furthermore, the agreement does not require Winnebago to stand in the shoes of the defaulting principal. "A surety or guarantor is one who promises to answer for the debt, default, or miscarriage of another . . . ." Cal.Civ.Code § 2787. While the dealer's default is a condition precedent to Winnebago's duty to repurchase, that duty is severely limited. Under the terms of the repurchase agreement, Winnebago will buy back only certain vehicles tendered by the bank. Thus, if the vehicles are stolen, sold out of trust, or otherwise unavailable, or are used, damaged, or more than twelve months old, Winnebago is not obligated to perform.

The repurchase agreement does not purport to guarantee any debt the dealer may owe to Union Bank. In fact, it expressly disavows liability for any accrued interest on the principal amount of the loan and further discounts the invoice cost or loan principal originally paid to Winnebago in arriving at the specified repurchase price. In effect, Winnebago guarantees the value and resale of only a portion of the bank's collateral; it does not guarantee the deal-

er's debt. While a guaranty relationship might conceivably include an obligation to repurchase collateral for the loan, nothing in the instant repurchase agreement, either by express language or implication, suggests such a relationship.

Thus we conclude that even under *Pacific Gas,* the proposed evidence does not prove guaranty terms of which the repurchase agreement is reasonably susceptible. Even if there were any ambiguity remaining due to the circumstances surrounding execution of the contract, the standard form repurchase agreement must be strictly construed against Winnebago, the drafting party. Cal.Civ.Code § 1654.

Next, Winnebago contends that the affidavits of its counsel and contracting officer, which allege an intention to create a guaranty relationship, raise a triable issue of fact, and that summary judgment was therefore improper. Winnebago, however, never alluded to any guaranty relationship, either in negotiations or in the contract itself. It offered the agreement to Union Bank as a unilateral contract, signed only by Winnebago, to be accepted by an extension of credit to Winnebago's retail dealer. It now attempts to assert a prior unilateral and private intention to become a guarantor. This attempt is foreclosed, in the absence of fraud or mistake, because the subjective, unexpressed and uncommunicated thoughts of a party are irrelevant to the material issue of the parties' intent. *Brant v. California Dairies, Inc.,* 4 Cal.2d 128, 133, 48 P.2d 13, 16 (1935); *Ribiero v. Dotson,* 187 Cal. App.2d 819, 821, 9 Cal.Rptr. 909, 911 (1960); 3 A. Corbin, Contracts §§ 538 n.50, 579 n.62 (1960, Supp.1971).

Finally, with regard to the award of attorney's fees, we conclude that the district court erred. Ordinarily, the prevailing party is not entitled to an award of attorney's fees unless the losing party has acted in bad faith. *See F. D. Rich Co. v. United States ex rel. Indus-* *trial Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974). The district court adopted a finding "[t]hat Winnebago's defense was maintained in bad faith." As the name, address, etc., of the firm representing the bank are printed on each page of the findings and conclusions, it is not difficult to surmise that an attorney, rather than the judge, was the author of the language. As we have said before:

> We are aware that busy judges sometimes request attorneys to prepare the first draft of proposed findings and conclusions. The vice is when the district judge fails to study them and make such changes as are necessary to be sure they reflect his opinion.

*Nissho-Iwai Co., Ltd. v. Star Bulk Shipping Co.,* 503 F.2d 596, 598 (9th Cir. 1974). Whether the district court made such a study of the findings is unknown so we are bound to scrutinize them more carefully. *Cf. Burgess & Associates v. Klingensmith,* 487 F.2d 321, 324–25 (9th Cir. 1973). Under this test, a finding of bad faith cannot be supported on the present record.[2]

Winnebago offered affidavits in support of the motion to reconsider tending to show a unilateral intention to create a guaranty relationship under the repurchase agreement. While insufficient to prevent summary judgment, the attempted defense does not demonstrate bad faith. In responding to the bank's demand for repurchase, Winnebago stood on a theory of guaranty and requested the statutory rights of a guarantor. In this regard, it is significant that Union Bank originally claimed in its complaint that Winnebago was a guarantor of the dealer's obligation. We can find nothing in the record which suggests that Winnebago sought the status of a guarantor in bad faith or otherwise acted vexatiously, wantonly or for oppressive reasons. *See K–2 Ski Co. v. Head Ski Co., Inc.,* 506 F.2d 471, 476 (9th Cir. 1974). According-

---

2. Because of the facts in this case, we would arrive at the same conclusion whether the de-termination of bad faith is considered a finding of fact or a conclusion of law.

ly, the award of attorney's fees must be reversed.

Affirmed in part, reversed in part.