**The CECO CORPORATION,
Plaintiff-Appellee,**

v.

**BLISS & LAUGHLIN INDUSTRIES,
INC., Defendant-Appellant.**

**No. 75–2552.**

United States Court of Appeals,
Ninth Circuit.

July 18, 1977.

William E. Lucas, argued, of McCaleb, Lucas & Brugman, Chicago, Ill., for defendant-appellant.

Clarence J. Fleming, argued, McDougall, Hersh & Scott, Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS,[*] GOODWIN and KENNEDY, Circuit Judges.

## OPINION

CUMMINGS, Circuit Judge.

Plaintiff filed this suit in March 1974 seeking a declaratory judgment that Cunningham Patent No. 3,527,320 held by defendant is invalid or, in the alternative, not infringed by plaintiff's scaffolding. After a trial, the district court held the patent invalid on the grounds of obviousness and prior public use. The court also held that plaintiff's scaffold does not infringe the Cunningham claims, even if valid.

Arthur L. Cunningham was awarded the patent in question on September 8, 1970, on the basis of his patent application filed on July 19, 1968. He was employed by Superior Scaffolding Company in Torrance, California, from 1961 through 1968 as its plant manager and then as its vice president of manufacturing. Defendant acquired the assets and stock of Superior on December 31, 1967.

While Cunningham was employed by Superior, that company manufactured, leased and sold shoring under its Squire Patent No. 3,190,405.[1] This shoring was known as SHORE–X, and the patent for it was upheld in *Bliss & Laughlin Industries, Inc. v. Bil-Jax, Inc.*, 356 F.Supp. 577 (N.D.Ohio 1972).[2] The Squire shore is used as a temporary support for concrete forms in constructing concrete buildings and bridges. Its importance is vigorously championed by defendant as a major breakthrough in modern concrete construction. The SHORE–X units are vertically extendable through the telescoping of vertical members of extension frames within upright tubular members of adjacent base frames. The specification of this Squire patent, in disclosing that telescoping frames were established in the prior art, states that "Telescoping of the legs of an extension frame inside *or outside* of the legs of a base frame to get varied heights is not basically new * * *" (emphasis added).

In the Squire patent, one or more pairs of base frames is interconnected and supported by diagonal braces. The legs of the extension frames are telescopically received within the vertical tubular members of the adjacent base frames. Pins are positioned in selected holes in the base frames, and the lower ends of the extension frame legs rest on the pins. The position of the removable pins therefore determines the amount of telescoping engagement between the exten-

[*] The Honorable Walter J. Cummings, United States Circuit Judge, Seventh Circuit, is sitting by designation.

[1.] Robert K. Squire, the patentee, was also the founder and chief executive officer of Superior.

[2.] Erwin Patent No. 1,873,766 on which plaintiff relies was not brought to the *Bil-Jax* court's attention.

sion frames and the base frames. The extension frames are also braced by diagonal braces which run from the top of the extension frame to the base frame. Cunningham was completely familiar with the Squire structure.

In 1966 or thereabouts, Cunningham designed an extension frame wherein the upright members telescope on the outside of the uprights of adjacent Squire base frames. The tubes are slit to provide a clearance for the horizontal braces of the base frames. The major difference between the Squire and Cunningham units is in substituting exterior telescoping slit tubes. Whereas in the Squire unit the extension frames telescope within the closed upright tubular members of the adjacent base frames, the Cunningham unit uses slit tubes or channels that telescope on the outside of the same base frames used in Squire.

A complete scaffold unit including the Cunningham extension frames was set up in Superior's plant in the summer of 1966. In the unit assembly, Cunningham extension frames were used with SHORE–X base frames as well as with the standard cross bracing members which formed a part of the SHORE–X system. The manner of securing the slit tubes together by horizontal struts was quite similar to the method of securing the SHORE–X's extension legs. Defendant dubs its Cunningham patent as "an improvement" over Squire (Reply Br. 6).[3]

In 1971, plaintiff decided to explore the possibility of manufacturing its own scaffolding instead of renting scaffolding as it had done previously. Its Concrete Forming Division's chief engineer, Raymond H. Jurewicz, reviewed the various shoring and scaffolding units on the market and in the available literature. Jurewicz then made the necessary calculations for his scaffolding design in half a day without any knowledge of the Cunningham patent and with scant prior scaffolding design experience. Indeed, Jurewicz did not learn of the Cunningham patent until after his units were already in the field. Defendant asserts that Cunningham's claims 1, 2, 5, 6, 7 and 8 read literally on plaintiff's structure, although claim 1 is most emphasized by defendant.

After considering proposed findings of fact and conclusions of law submitted by both parties and after considering their post-trial memoranda, the district court entered the findings of fact and conclusions of law submitted by plaintiff. They are reported in 186 U.S.P.Q. 114. Because the findings and conclusions adopted below were prepared by plaintiff's counsel, we have scrutinized them more carefully than findings and conclusions drafted by a trial judge. *Burgess and Associates, Inc. v. Klingensmith*, 487 F.2d 321, 324–325 (9th Cir. 1973). However, we need not consider whether each finding and conclusion of law is correct,[4] for we are affirming only on the ground that the subject matter of the Cunningham patent was obvious under 35 U.S.C. § 103 at the time the invention was made. Our review satisfies us that the district court properly applied the obviousness standards developed in *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545, in deciding that the Cunningham patent was manifestly invalid for obviousness and that the court's conclusion is supported by the evidence. *Nissho-Iwai Co.*

---

3. The existence of this hybrid unit in unsecured areas of the Superior plant gives rise to the defendant's prior public use argument. In view of our determination that the Cunningham patent is invalid on obviousness grounds, we will not burden this opinion with the facts relevant to this argument. They are set forth in the district court findings 17–20 reported in 186 U.S.P.Q. at 118–119.

4. Defendant has conceded that if we agree with the district court that all the operative and controlling facts bearing on patent validity are as Ceco has represented, the judgment should be affirmed (Reply Br. 1). Defendant encourages us to give controlling significance to the commercial realities and practical problems in the shoring industry in passing on the validity of the Cunningham patent. We decline this invitation. See note 8 *infra*. Because we base our decision on the obviousness ground, the public use and infringement issues are moot.

*v. Star Bulk Shipping Co.*, 503 F.2d 596, 597–598 (9th Cir. 1974).

First, as to the scope and content of the prior art, the Squire patent, which issued in 1965 and is also owned by defendant, was clearly the basis for the Cunningham patent. Indeed the Cunningham unit represented merely a reversal of parts with respect to Squire. In Squire, the legs of the extension frames are tubes and telescope within the tubular legs of the base frames. In Cunningham, the extension legs possess channels which telescope on the outside of the same base frames used in the SHORE–X system. Thus Cunningham constituted only a modification of Squire.[5]

Defendant attempts to identify "seemingly simple" yet "critical" departures from the prior art (Br. 11–12). Defendant emphasizes that Cunningham employs exterior telescoping tubes which were slit to create channel-shaped extension frame stanchions, but so did Erwin Patent No. 1,763,766, which issued in 1930. Moreover, Erwin used channels for the same purpose as Cunningham, *viz.*, to provide clearance for the horizontal and cross struts of the base frame. Although the Erwin patent was labeled "platform construction" and the Squire patent "extendable shore," each could be used as an "extendable shoring scaffold," the nomenclature of the Cunningham patent. In fact, the first sentence of the Erwin patent begins "The present invention relates to improvements in scaffolds * * *." It strains credulity to expect those in the shoring art not to consider the state of the scaffolding art. It is noteworthy, in this respect, to recall that in defendant's Squire patent, the inventor admitted in the patent specification "[t]elescoping of the legs of an extension frame inside *or outside* of the legs of a base frame to get varied heights is not basically new * * * *" (emphasis added). Therefore, it did not require great innovation to derive Cunningham from the prior art.

Experiential data also exists to validate our assessment of Cunningham's obviousness, thus serving as a check that hindsight has not tainted our conclusion. Obviousness is shown because others had used slit pipe or channels for scaffolding prior to or not much later than Cunningham and independently of his work. Erwin's patent application was filed in 1928, forty years prior to Cunningham's filing date. Squire's filing date was in 1961, seven years ahead of Cunningham's. Executive vice president Kabbaz of the Patent Scaffolding Company designed a vertically extendable shoring scaffold in 1968 using slit tubes or channels for the extension members.[6] Plaintiff's engineer, Mr. Jurewicz, used channels in designing its accused extendable scaffold in 1971. Likewise, the patentees of Breeze Patent No. 3,564,830 developed extension frames using channels not materially different from Cunningham's. Their patent was granted five months after Cunningham's.

■ From the foregoing, it is clear that the key elements of the Cunningham combination were embodied in the Squire and Erwin patents[7] and were combined in obvious fashion by Cunningham. The independent development of similar subject matter by others is further evidence of obviousness.[8] *Novo Industrial Co. v. Stan-*

---

5. See text accompanying note 3 *supra.*

6. Kabbaz's work was independent of Cunningham's system and done without any knowledge thereof. In addition, Kabbaz did not have a technical education and his experience was in sales. Of course, the fact that Kabbaz's scaffold was not commercialized is immaterial.

7. Defendant points to two other departures of Cunningham from Squire. First, in Cunningham the cross braces attach at the tops and bottoms of the extension frames rather than to the top of the extension frame as in Squire. But this is plainly disclosed by Kosmach Patent No. 3,420,030. Second, Cunningham eliminates the series of holes Squire had in its base frame. If not a trivial difference, this departure can also be rejected out of hand by examination of the Kosmach patent.

8. Defendant makes much of historical problems in the art and the assertedly unsuccessful attempts by others to solve them. "However, such secondary considerations cannot be the basis for validating a patent which, as here, is

*dard Screw Company*, 374 F.2d 824, 828 (7th Cir. 1967).

Defendant's November 3, 1972, amendments to the claims of the Cunningham reissue application[9] acknowledge the importance of the Erwin patent by adding the "removability" limitation to claim 1 (and all claims dependent thereon) in an effort to distinguish the Erwin patent which does not show removable cross braces. Defendant's patent solicitor has admitted that his discovery of the Erwin patent prompted the "removability" amendment. But the addition of this trivial "removability" factor does not cure obviousness in any event, for removability was a feature of the 1965 Squire patent.

It is also noteworthy that defendant never manufactured or sold the Cunningham scaffold nor licensed anyone thereunder. Instead, defendant has continued its production of scaffolding under the Squire patent. One of defendant's vice presidents and also inventor Squire have admitted that the Squire scaffolding is a better commercial product than the one disclosed in Cunningham.

■ Finally, the defendant cannot rely on the presumption of validity of the Cunningham patent under 35 U.S.C. § 282 because the Erwin patent was seemingly unknown to the Examiner and was not cited by him during the prosecution of the original patent. Squire '405 was also not included in the references cited by the Examiner.[10] Moreover, while acknowledging the existence of the Erwin patent in the Cunningham reissue application, defend-

ant's patent solicitor did not furnish the Examiner with a copy of the Erwin patent nor advise him with particularity how the Cunningham patent "distinguishe[d] over" the Erwin patent's use of telescoping U-shaped channel members in the extension frames of a vertically extendable scaffold, as required by Section 707.05(b) of the Manual of Patent Examining Procedure. Thus there are no official actions or papers of the Examiner from which it confidently may be inferred that he had ever acquired actual knowledge of the subject matter of the Erwin patent. On this record, the presumption of validity of the patent was overcome. *Deere & Co. v. Sperry Rand Corp.*, 513 F.2d 1131, 1132 (9th Cir. 1975); *Hewlett-Packard Co. v. Tel-Design, Inc.*, 460 F.2d 625, 628 (9th Cir. 1972).

Since the findings of fact with respect to obviousness are supported by the evidence and since the conclusions of law as to obviousness under 35 U.S.C. § 103 properly apply *Graham v. John Deere Co., supra*, and its progeny,[11] the judgment of the district court is affirmed.

---

lacking in invention." *Deere & Co. v. Sperry Rand Corp.*, 513 F.2d 1131, 1133 (9th Cir. 1975).

9. Defendant filed an application for reissue of the Cunningham patent on July 28, 1971, to provoke an interference with Breeze *et al.* Patent No. 3,564,803 because the Cunningham patent was rendered partly inoperative by the overlapping Breeze claims. Cunningham eventually prevailed on the issue of priority of inventorship in the use of channels in a scaffold structure, the only issue involved in the interference resolved in the reissue proceeding.

10. Squire '405 is mentioned in the specification of the Cunningham application, but nothing in the file wrapper indicates that the Examiner considered it.

11. See, *e. g.*, *Dann v. Johnston*, 425 U.S. 219, 96 S.Ct. 1393, 47 L.Ed.2d 692; *Sakraida v. Ag Pro, Inc.*, 425 U.S. 273, 96 S.Ct. 1532, 47 L.Ed.2d 784; *Alcor Aviation, Inc. v. Radair Incorporated*, 527 F.2d 113 (9th Cir. 1975); *Norwood v. Enrenreich Photo-Optical Indus., Inc.*, 529 F.2d 3 (9th Cir. 1975).