CHILES, HEIDER & CO., INC., APPELLEE, V. PAWNEE
MEADOWS, INC., A NEBRASKA CORPORATION, APPELLANT,
RICHARD WOZNIAK ET AL., APPELLEES.

350 N.W.2d 1

Filed May 11, 1984. No. 83-279.

August P. Ross and Annette E. Mason of Ross & Mason, P.C., for appellant.

Michael G. Lessmann and Thomas E. Johnson of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, for appellee Chiles, Heider & Co., Inc.

KRIVOSHA, C.J., WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

The appellant, Pawnee Meadows, Inc. (Pawnee Meadows), appeals from a judgment entered by the district court for Saunders County, Nebraska, foreclosing a real estate mortgage given by Pawnee Meadows to appellee Chiles, Heider & Co., Inc. (Chiles, Heider), to secure performance of a contract entered into between Pawnee Meadows and Chiles, Heider. This being an equity case, we have examined the record de novo, *Tilden v. Beckmann*, 203 Neb. 293, 278 N.W.2d 581 (1979), and we have concluded that, except as modified herein, the judgment of the district court should be affirmed.

The record discloses that Pawnee Meadows, a

Nebraska corporation, was the owner of Lots 1 to 58, inclusive, in Pawnee Meadows, a subdivision in Saunders County, Nebraska. In connection with the development of the property, Sanitary and Improvement District No. 4 of Saunders County, Nebraska, was created pursuant to the provisions of Neb. Rev. Stat. §§ 31-701 et seq. (Reissue 1978). In August of 1974 Chiles, Heider and S.I.D. No. 4 entered into a letter agreement in which Chiles, Heider agreed to purchase certain construction fund warrants issued by S.I.D. No. 4. The agreement set out the terms of the purchase, including a requirement that the agreement between Chiles, Heider and S.I.D. No. 4 "shall not become effective until an agreement between Pawnee Meadows, Inc., the developer, and Chiles, Heider & Co., Inc. concerning the repurchasing of warrants has been signed." Simultaneous with the execution of the letter agreement, Pawnee Meadows and Chiles, Heider in fact entered into a repurchase agreement wherein Pawnee Meadows agreed that

> [a]t any time on or after a date four (4) years after the date of the first warrant issued by SID and purchased by Chiles, Heider, upon request of Chiles Heider, [Pawnee Meadows] will purchase from Chiles, Heider, *or any other holder of warrants issued by SID*, all unpaid warrants issued by SID requested by Chiles, Heider to be so purchased.

(Emphasis supplied.) The agreement further provided for how the purchase price was to be computed in the event of a repurchase, and when payment was to be made. By the agreement Chiles, Heider agreed that it would not request a repurchase if at least 45 houses in the S.I.D. had been completed or started, or if the total amount of outstanding warrants and bonds issued by S.I.D., plus accrued interest, reduced by the amount of any moneys in the bond fund of the S.I.D., did not exceed 30 percent of the assessed valuation of the S.I.D.

according to the last completed assessment thereof. There is no dispute that neither of the conditions existed and, therefore, Chiles, Heider was entitled to request the repurchase. The agreement between Chiles, Heider and Pawnee Meadows further provided that Pawnee Meadows would execute and deliver to Chiles, Heider a first mortgage covering Lots 1 to 58 in Pawnee Meadows to secure its obligation under the agreement.

In February of 1976 S.I.D. No. 4 executed a second letter agreement with Chiles, Heider. Both the letter agreement and the record reflect that the reason for the second letter agreement was because of certain questions which had been raised concerning the validity of the earlier agreement. This agreement, executed in February of 1976 between Chiles, Heider and S.I.D. No. 4, specifically provided in part: "This agreement replaces the agreement between us dated July 25, 1974, said agreement having been terminated because certain provisions thereof were deemed by our bond counsel to be unenforceable or illegal." While the earlier agreement was dated July 25, 1974, it was in fact accepted by S.I.D. No. 4 on August 15, 1974.

The agreement of February 1976 did not contain any condition similar to that contained in the August 1974 agreement to the effect that the agreement was conditioned upon Pawnee Meadows and Chiles, Heider entering into a repurchase agreement. We do not believe that the absence of this provision, however, is material to our resolution of this case.

Subsequently, the construction fund warrants were issued by S.I.D. No. 4 and were purchased by Chiles, Heider. The record reflects that at first Chiles, Heider sold most, if not all, of the warrants to various individuals, and later repurchased part of them. The record reflects that Chiles, Heider owns warrants in the total amount of $15,660.53 and that Chiles, Heider's parent company, Chiles, Heider Corporation, owns warrants in the amount of

$132,164.90. The remaining outstanding construction fund warrants in the amount of $270,234.78 are owned by various other persons.

More than a few years after the first warrants were issued, Chiles, Heider, by letter dated December 20, 1979, demanded that Pawnee Meadows repurchase all of the outstanding warrants held by it or others. Pawnee Meadows admittedly failed to do so, and Chiles, Heider commenced this action to enforce the terms of its repurchase agreement and to foreclose upon the mortgage given as security. The trial court found that the agreement was valid and binding on Pawnee Meadows and that Pawnee Meadows was obligated to purchase all of the outstanding warrants. It further found that the mortgage was valid and that Pawnee Meadows owed Chiles, Heider the total sum of $681,082.18, representing principal plus interest to date of trial. The court then ordered that in default of payment of this sum for a period of 20 days the mortgaged property should be sold to satisfy the obligation.

Pawnee Meadows has assigned six errors allegedly committed by the trial court, which reduce to four issues requiring our examination. The issues are: (1) Whether the agreement between Chiles, Heider and Pawnee Meadows, dated August 15, 1974, is a guaranty or an independent obligation, and, if a guaranty, whether Pawnee Meadows is discharged from its obligation because of various facts raised by Pawnee Meadows; (2) Whether the court erred in declaring foreclosure without formal tender of the warrants by Chiles, Heider to Pawnee Meadows; (3) Whether the court erred in decreeing foreclosure over and above the amounts of the warrants owned by Chiles, Heider itself; and (4) Whether the trial court erred in not providing for the release of individual lots.

Turning first to the issue of whether the agreement dated August 15, 1974, is a guaranty or an independent obligation, we determine that it is not a

guaranty but, rather, is an independent obligation, unaffected by any subsequent actions taken by and between S.I.D. No. 4 and Chiles, Heider. We reach our conclusion on the basis that the agreement signed by Chiles, Heider and Pawnee Meadows does not have either the characteristics or the obligations of a guaranty. In the case of *In re Estate of Williams*, 148 Neb. 208, 215-16, 26 N.W.2d 847, 851 (1947), we explained what a guaranty was, saying:

"A guaranty is a collateral undertaking by one person to answer for the payment of a debt or the performance of some contract or duty in case of the default of another person who is liable for such payment or performance in the first instance." [Citation omitted.]

"A guaranty * * * is collateral to, and made independently of, the principal contract which is guaranteed; and the guarantor's liability is secondary rather than primary or original." [Citation omitted.]

With that definition in mind, and upon examination of the document in question, it is clear that the contract obligation entered into between Chiles, Heider and Pawnee Meadows dated August 15, 1974, was not a collateral undertaking by Pawnee Meadows to answer for the payment of a debt or the performance of S.I.D. No. 4. S.I.D. No. 4 had no obligation to repurchase the warrants, and Pawnee Meadows had no obligation to pay the warrants if S.I.D. No. 4 did not. The agreement between Pawnee Meadows and Chiles, Heider was to the effect that at any time on or after a date 4 years after the date of the first warrant issued by S.I.D. No. 4, Pawnee Meadows would agree to purchase the warrants, some of which at that point in time might not be due. The agreement between Chiles, Heider and Pawnee Meadows, unusual as it may have been in a transaction of this nature, was freely and voluntarily entered into by Pawnee Meadows as an inducement to get Chiles, Heider to purchase the warrants from

S.I.D. No. 4. The duties and obligations of S.I.D. No. 4 were never involved and, in fact, are not affected by the repurchase. S.I.D. No. 4 is still obligated to pay the warrants when due and when presented by whomever may be the holders. Pawnee Meadows' obligation to repurchase under its agreement with Chiles, Heider was not dependent upon the failure of any performance by S.I.D. No. 4. The obligation of S.I.D. No. 4 is to pay the warrants when due. The obligation of Pawnee Meadows is to repurchase the warrants any time after 4 years from the date the first warrant was issued when requested by Chiles, Heider. The second obligation is simply not in law a guaranty of the first. We believe that the case of *Union Bank v. Winnebago Industries, Inc.*, 528 F.2d 95 (9th Cir. 1975), is similar to the instant case. In *Union Bank* the bank and Winnebago Industries were involved in a financial arrangement similar to the arrangement which existed in the instant case between Pawnee Meadows and Chiles, Heider. Winnebago contended that pursuant to a repurchase agreement it had executed, it was a guarantor or surety. In rejecting Winnebago's claim the U.S. Court of Appeals for the Ninth Circuit said at 98-99:

> The manifest purpose of the repurchase agreement was to induce additional extensions of credit to Winnebago's retail dealers, enabling them to increase their inventories of Winnebago recreational vehicles. Further, the agreement affords the lending institution a quick and relatively easy method for disposing of the floored inventory at a specified price. . . .
>
> . . . .
>
> The repurchase agreement does not purport to guarantee any debt the dealer may owe to Union Bank. In fact, it expressly disavows liability for any accrued interest on the principal amount of the loan and further discounts the invoice cost or loan principal originally paid to Winnebago in arriving at the specified repurchase price. In

effect, Winnebago guarantees the value and resale of only a portion of the bank's collateral; it does not guarantee the dealer's debt. While a guaranty relationship might conceivably include an obligation to repurchase collateral for the loan, nothing in the instant repurchase agreement, either by express language or implication, suggests such a relationship.

The trial court was correct in concluding that the repurchase agreement was an independent contract and not a guaranty and, therefore, the claims of Pawnee Meadows with regard to the document are without merit.

Having determined that the repurchase agreement is an independent obligation and not a guaranty, we may disregard all of the assignments raised by Pawnee Meadows which are dependent upon our first determining that the repurchase agreement is a guaranty.

Pawnee Meadows next argues that the trial court erred in declaring a foreclosure, when the evidence fails to disclose that Chiles, Heider tendered the warrants to Pawnee Meadows when demanding the repurchase. We believe that the trial court was correct, and Chiles, Heider's failure to actually tender the warrants when making its demands by letter on December 20, 1979, was not a defect. While, under certain circumstances, a tender may be a condition precedent to enforcement of an action, in the instant case the failure to tender the warrants does not relieve Pawnee Meadows of liability. It is clear that Pawnee Meadows would not have made payment if the warrants had in fact been tendered. Their position was that they were under no obligation until S.I.D. No. 4 defaulted. As we said in *Hogan v. Pelton*, 210 Neb. 530, 535-36, 315 N.W.2d 644, 647 (1982): "The law does not require a useless formality. A formal tender is not necessary where a party has shown by act or word that it would not be accepted if made." See, also, *Canaday v. Krueger*,

156 Neb. 287, 56 N.W.2d 123 (1952). We do believe, however, that because some or all of the warrants involved herein may be negotiable instruments, see *S.I.D. No. 32 v. Continental Western Corp.*, 215 Neb. 843, 343 N.W.2d 314 (1983), Chiles, Heider should deliver to Pawnee Meadows such warrants as are to be repurchased before Pawnee Meadows is required to make payment. For this reason we believe that the judgment of the trial court should be modified to require Chiles, Heider to deliver to the clerk of the district court for Saunders County, Nebraska, such of the warrants, properly endorsed if necessary, as are to be purchased by Pawnee Meadows; and, upon delivery of such warrants, Pawnee Meadows should have 20 days in which to make payment to the clerk of the district court for such warrants and, upon payment, receive physical possession of the warrants from the clerk of the district court. Upon failure of Pawnee Meadows to make payment to the clerk of the district court within 20 days after the warrants have been delivered by Chiles, Heider to the clerk, the real estate described in the mortgage is to be foreclosed in the manner previously ordered by the trial court in satisfaction of the debt. This modification does not, however, entitle Pawnee Meadows to a new trial.

The next issue is whether the trial court erred in decreeing foreclosure in an amount sufficient to satisfy a repurchase of all of the warrants, notwithstanding the fact that Chiles, Heider was not the owner of all of the warrants. The evidence discloses that of the total outstanding warrants in the amount of $418,060.21, Chiles, Heider owned only $15,660.53, and its parent corporation, Chiles, Heider Corporation, owned $132,164.90. The remaining $270,234.78 was owned by various other warrant holders. The difficulty with this argument is that it is simply contrary to the agreement which Pawnee Meadows made with Chiles, Heider. The agreement specifically provides that upon *"request of Chiles*

*Heider''* Pawnee Meadows will purchase either from Chiles, Heider, *or any other holder*, warrants issued by S.I.D. No. 4. Therefore, by the express terms of the agreement Chiles, Heider was given the authority by Pawnee Meadows to request the repurchase of all warrants, regardless of who held the warrants. This is not a question of whether Chiles, Heider may bring a class action but, rather, whether the suit brought by Chiles, Heider to enforce the terms of the repurchase contract was brought in the name of the real party in interest. Neb. Rev. Stat. § 25-304 (Reissue 1979) provides that ''a person with whom or in whose name a contract is made for the benefit of another . . . may bring an action without joining with him the person for whose benefit it is prosecuted.''

In *O'Shea v. North American Hotel Co.*, 109 Neb. 317, 191 N.W. 321 (1922), the plaintiff and two other friends were the owners of several lots in Scottsbluff, Nebraska. They believed that a hotel would make their lots more valuable, and entered into an agreement with North American Hotel Company. The contract, however, was entered into solely between O'Shea and North American Hotel Company, though the language of the contract made it clear that it was on behalf of all three owners. Default occurred, and O'Shea, in his own name, sued North American Hotel Company on behalf of himself and the other two owners. North American Hotel Company objected on the grounds that O'Shea was not the real party in interest with respect to anything more than his one-third interest in the real estate. In rejecting the claim this court cited the predecessor to § 25-304 as authority for bringing such an action pursuant to the contract of the parties, and it permitted O'Shea to bring suit on behalf of all the parties to the contract in his own name. See, also, *Ley v. Miller*, 28 Neb. 822, 45 N.W. 174 (1890). Nothing Chiles, Heider did in making demand or bringing this suit in any way affected the validity of the war-

rants. By making demand for repurchase under the terms of the agreement, Chiles, Heider was simply doing what the parties had earlier agreed to in the repurchase agreement. Under the terms of the repurchase agreement Chiles, Heider was the real party in interest for the purpose of making demand upon Pawnee Meadows to purchase all of the warrants, regardless of who held them, and was entitled to bring the suit in its own name to enforce performance of *its* contract with Pawnee Meadows without making all of the other warrant holders parties. The trial court was correct in requiring Pawnee Meadows to purchase all of the outstanding warrants and, upon failure thereof, to permit the land to be foreclosed to pay for the repurchase of all of the warrants, subject, of course, only to the condition as provided for in this opinion that in fact the warrants be physically delivered to Pawnee Meadows. This is what Pawnee Meadows agreed to in writing, and it should not now be surprised.

We have further examined the claim raised by Pawnee Meadows regarding the release of individual lots and found it to be without merit. No purpose would be served in detailing the claim to any greater extent. For these reasons the judgment of the trial court is affirmed, except as modified herein, and the cause is remanded to the district court with directions to modify the decree as provided for in this opinion.

AFFIRMED AS MODIFIED.

BOSLAUGH, J., participating on briefs.