SMITH INTERNATIONAL, INC., a
California Corporation,
Plaintiff-Appellee,

v.

HUGHES TOOL COMPANY, a Delaware
Corporation, Defendant-Appellant.

No. 80–5199.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 3, 1981.

Decided Jan. 7, 1982.
Rehearing Denied Feb. 22, 1982.

**1374**

Edward A. Haight, Haight, Hofeldt, Davis & Jambor, Chicago, Ill., for defendant-appellant.

Andrew J. Belansky, Christie, Parker & Hale, Pasadena, Cal., for plaintiff-appellee.

Before GOODWIN, NELSON and REINHARDT, Circuit Judges.

GOODWIN, Circuit Judge.

Hughes Tool Co. appeals a declaratory judgment which held two patents invalid for obviousness, for anticipation by prior art, and for failure to properly claim the patentable art.

### A. *Rotary Drilling Problem.*

Rotary drilling for oil and gas wells uses a rock bit threaded onto a drill pipe "string" which is lowered into a hole and rotated. The rock bit, in addition to having a "head" for such threading, has three rotatable cones with teeth or other cutting elements. These elements turn on bearings located in the interior of each cone and on three shafts or axles suspended from the "head." When the bit is lowered and rotated under great weight against the bottom, a drilling fluid is pumped down through the drill pipe, to the drill bit and then through nozzles in the bit to pick up loosened cuttings and carry them to the outside of the pipe and eventually to the surface between the drill pipe and the well casing.

Two types of bit are in use, the roller bearing bit and the journal bearing bit. In the first, free-turning rollers separate the cylindrical surfaces on the inside of the shaft; in the second, the cylindrical surfaces oppose and engage each other. Either type performs under demanding conditions. At a depth of several miles, for example, the downhole temperatures can reach 400°F, and the drilling fluid may whip through and around the bit at 200–500 gallons per minute.

The resultant wear means that spent bits must be brought to the surface for replacement at great cost to a drilling company. For this reason, the industry has continuously searched for means to increase the working life of bits. Prior to the Hughes Patent No. 3,397,928 ('928) and Patent No. 3,476,195 ('195) patents, engineers attempted to increase the bit lifespan by sealing the drill bit to eliminate slush lubrication, a process in which the abrasive drilling fluid circulates freely through the bearings and produces wear.

Two sealing methods were patented prior to the Hughes patents, but neither used an O-ring in combination with a journal or roller bearing and a recommended minimum squeeze for the O-ring. The Turner Patent in 1954 used an O-ring to seal a journal as well as a ball bearing but did not suggest anything more specific than a "slight" squeeze of the O-ring. According to the deposition of four former employees of Turner Bit Company, the Turner seal was plagued with leakage while the company continued to experiment with seals in a variety of positions and configurations. Consequently, the company became defunct, and its remaining bits were auctioned off to a junk dealer. Smith discovered that one of the Turner bits had an O-ring seal and entered the bit into evidence in the instant case as an illustration of prior art.

The Neilson Patent in 1962 restricted itself to using an O-ring in a roller bearing and, like the Turner patent, did not specify a minimum amount of squeeze.

The Parker Handbook, the most comprehensive and authoritative guide in the trade, cautioned against an O-ring seal under rotary conditions involving high temperatures and high speed rubbing surfaces. For an O-ring seal with these elements present, the handbook advised hard rubber (80–84 durometer), a limited squeeze (generally below 10%) and positioning away from the bearing surfaces.

Sealing the drill bit brought an additional problem: the buildup of lubricant pressure

during drilling. The Parks Patent in 1959 observed that a rise in the bearing temperature during the rotation of the bit could cause a rise in lubricant pressure in the bearings and suggested a relief valve to counteract the pressure. A prior patent in 1946, the Christensen Patent, had recognized the problem and had suggested using "a grease fitting of a pressure relief type."

Smith International included relief valves in two experimental bits in the early 1960's. Records of the Smith experiments are sketchy because the first bit lasted for little more than an hour and the second lasted for only twelve hours. None of the Hughes' forerunners recognized that even after pressure compensators and vent holes were installed, the pressure within the bit would continue to exceed the drilling fluid pressure. Thus, lubrication would be lost, and wear would accelerate.

### B. '928 Patent.

The '928 Patent by Galle, an employee of Hughes Tool Company, is entitled "Seal Means for Drill Bit Bearings" and uses illustrations and words to describe the use of an O-ring with a specified durometer hardness and compression to seal a journal or roller bearing.

Both the drawings and statement of what is being patented emphasize the use of the compressed O-ring seal in a journal bearing. Figures 1–3A depict an O-ring with Galle's specifications in a roller bearing and the remaining six pictures show the O-ring in a journal bearing. Galle's statement concentrates on sealing a journal bearing; nine of the eleven items describe in detail the compression (at least 10%) and durometer hardness (70 or under) of an O-ring used to seal a journal bearing while only two claim the use of an O-ring in a roller bearing.

### C. '195 Patent.

The '195 patent describes a recurrent problem with sealed rock bits: even when pressure compensators and vent holes attempt to equalize the pressure between the lubricant within the bearing and the drilling fluid surrounding the bit, pressure continues to build within the bit. Galle, the holder of this patent, also advises the use of a one-way pressure relief valve to counteract the buildup.

### D. Adopted Findings of the Trial Court.

The trial court adopted almost verbatim and used as its opinion the proposed findings of Smith International.

The Ninth Circuit has repeatedly held that adopted findings require increased appellate scrutiny. *Norris Industries, Inc. v. Tappan Co.*, 599 F.2d 908, 909 (9th Cir. 1979); *Zweig v. Hearst Corp.*, 594 F.2d 1261, 1263 (9th Cir. 1979); *Photo Electronics v. England*, 581 F.2d 772, 777 (9th Cir. 1978); *Ceco Corp. v. Bliss & Laughlin Industries, Inc.*, 557 F.2d 687, 689 (9th Cir. 1977); *Burgess & Associates, Inc. v. Klingensmith*, 487 F.2d 321, 324–25 (9th Cir. 1973).

■ Although the court in *Photo Electronics* found adopted findings appropriate in highly technical patent cases and maintained the clearly erroneous standard for reversal, it acknowledged that an adoption should give rise to heightened scrutiny.

> "Certainly the fact that the trial judge has adopted proposed findings does not, by itself, warrant reversal [footnote omitted]. But it does raise the possibility that there was insufficient independent evaluation of the evidence and may cause the losing party to believe that his position has not been given the consideration it deserves. These concerns have caused us to call for more careful scrutiny of adopted findings [citations omitted]." *Photo Electronics v. England*, 581 F.2d 772, 777 (9th Cir. 1978).

Thus, although the clearly erroneous standard applies, this court gives heightened scrutiny to the findings not prepared by the trial court.

### E. Standards Applied to the Patents.

Title 35 U.S.C. § 282 states that a patent is presumed valid and that the burden of establishing invalidity lies with the challenging party. For a patent to be declared

invalid, the complaining party must establish that the subject matter was known or used by others (35 U.S.C. § 102), or that prior art would have made the subject matter, taken as a whole, obvious to a person of ordinary skill in the field (35 U.S.C. § 103).

■ *'928 Patent.*

■ Smith did not meet its burden of proving the invalidity of the '928 patent. The subject matter was not known or used by others. Patent '928 was a combination patent comprised of several elements: an O-ring of specified hardness and squeeze used in a journal as well as a roller bearing under high speed and high temperature rotary conditions. Although the individual elements such as the O-ring and the journal bearing are well-known, their combination was not known.

■ By statute and under case law, a combination patent is judged in terms of all of its components. Title 35 U.S.C. § 103 specifies that an inquiry into patentability must be directed toward "the subject matter as a whole." The Supreme Court in *United States v. Adams*, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966), upheld the validity of a patent for a nonacid, "wet" battery, all of whose components had been used or suggested individually before. The Court only required, as does the Ninth Circuit,[1] that the combination be synergistic and result in new and unexpected characteristics. The combination of elements in the '928 patent did produce a new and unexpected result—the first consistent 100-plus hour rock bit. The maximum previous lifespan had been 50–60 hours and was accomplished by the use of a seal also protected by patent.[2]

Judged as a whole, the Hughes patent was not anticipated by prior art. In combining an O-ring with a journal bearing, Galle tried something contrary to the lead-ing industry authority on O-rings, the Parker Handbook. Although the previous patents cited by Smith contained some of the elements of the '928 patent, none contained all the components of the Galle approach.

■ In addition, Hughes submitted with the patent application a list of 14 prior patents, including those mentioned by Smith, and none was found by the Patent Office to interfere with the granting of '928. The statutory presumption of patent validity is dissipated only "when the patent examiner is shown to have failed to consider pertinent prior art." *Photo Electronics Corp. v. England, supra,* 581 F.2d at 775.

Although Smith did not demonstrate obviousness or anticipation by prior art, the trial court ruled that Patent '928 was invalid. The trial court ruling was mistaken and, thus, clearly erroneous. The increased scrutiny mandated by the judge's wholesale adoption of Smith's proposed findings merely makes the trial court's mistake more obvious.

■ The finding that Patent '928 did not clearly claim the patentable art is also wrong because the drawings and articulation of the subject matter of the patent are detailed and clear.

*(2) '195 Patent.*

■ The '195 Patent is also a combination patent because it combines a pressure relief valve with a pressure compensator. Taken as a whole, the subject matter is not obvious because none of the patents used by Smith as examples of prior art involves a pressure compensator. Again, although Smith failed to meet its burden, the trial court ruled Patent '195 invalid, a mistaken and therefore clearly erroneous ruling.

---

1. *Penn Intern. Industries v. Pennington Corp.,* 583 F.2d 1078, 1081 (9th Cir. 1973); *Photo Electronics Corp. v. England,* 581 F.2d 772, 775 (9th Cir. 1978); *Santa Fe-Pomeroy, Inc. v. P & Z Co., Inc.,* 569 F.2d 1084, 1094 (9th Cir. 1978); *Kamei-AutoKomfort v. Eurasian Automotive Products,* 553 F.2d 603, 608 (9th Cir. 1977).

2. This patent for the "Belleville sale" was also owned by Hughes; Smith was found guilty of infringement of the patent in *Smith Industries International v. Hughes Tool Company,* 396 F.2d 735 (5th Cir. 1968).

Contrary to the mistaken ruling of the trial court, Patent '195 also clearly stated the patentable art it was claiming.

## CONCLUSION

The judgment is reversed, and Patents '928 and '195 are declared to be valid. The Hughes counterclaim for infringement is reinstated, and the cause is remanded for further proceedings on the counterclaim.

Reversed and remanded.