**THOMPSON–HAYWARD CHEMICAL CO., Appellant, Cross-Appellee,**

v.

**ROHM AND HAAS CO., Appellee, Cross-Appellant.**

**Appeal Nos. 83–981, 83–1017.**

United States Court of Appeals, Federal Circuit.

Oct. 3, 1984.

Dana M. Raymond, New York City, argued for appellant, cross-appellee. With him on the brief were Arthur S. Tenser and John D. Murnane, New York City, of counsel.

Rudolf E. Hutz, Wilmington, Del., argued for appellee, cross-appellant. With him on the brief were Januar D. Bove, Jr.,

---

F.L. Peter Stone and Jeffrey B. Bove, Wilmington, Del.

George W.F. Simmons, Philadelphia, Pa., of counsel.

Before RICH, DAVIS, BENNETT, MILLER and SMITH, Circuit Judges.

RICH, Circuit Judge.

Thompson-Hayward Chemical Co. (T–H) appeals from a judgment of the United States District Court for the Eastern District of Louisiana, the Honorable Patrick E. Carr, judge, in a patent infringement action by which the patentee, Rohm and Haas Co. (R & H) was awarded $833,121 in damages for infringement (83–981). R & H cross-appeals the amount of the damage award (83–1017).

Appellant T–H has designated certain issues for appeal: (1) was the district court correct in holding that the Supreme Court's decision in *Dawson Chemical Co. v. Rohm & Haas Co.*, 448 U.S. 176, 100 S.Ct. 2601, 65 L.Ed.2d 696, 206 USPQ 385 (1980), has retroactive applicability; (2) did the trial court abuse its discretion in rejecting T–H's defense of estoppel by "implied license"; (3) did the court err in holding that R & H's claim was not barred by laches; and (4) did the district court err in awarding prejudgment interest to R & H.

Cross-appellant R & H appeals two questions: (1) did the trial court err in not awarding damages based on a reasonable royalty rate, even though such damages were higher than those based on R & H's lost profits; and (2) did the court err in awarding prejudgment interest under the Louisiana Civil Code without following a 1981 amendment to the code that increased the annual interest rates.

I.

1. *Background of the Case*

On June 11, 1974, U.S. Patent No. 3,816,-092 (the propanil patent) issued to R & H which, on that same date, filed two infringement suits, one in New Orleans against T–H and the other in Houston against the Dawson Chemical Co., et al. In August, 1976, in the Dawson case, the district court decided by summary judgment that a licensing policy by R & H constituted patent misuse. 191 USPQ 691 (S.D.Tex. 1976). This decision was reversed by the Fifth Circuit Court of Appeals, 599 F.2d 685, 203 USPQ 1 (5th Cir.1979), which was affirmed by the Supreme Court in *Dawson Chemical Co. v. Rohm & Haas Co.*, 448 U.S. 176, 100 S.Ct. 2601, 65 L.Ed.2d 696, 206 USPQ 385 (1980) (the *Dawson* decision).

R & H filed its first amended and supplemental complaint herein on June 24, 1974, alleging acts of infringement on specific dates in June. Also on that date T–H asked R & H for a license under the propanil patent, which was denied. In the interim between the district court decision and that of the Supreme Court in *Dawson*, proceedings in the instant case were continued by a series of joint motions. After the Supreme Court's ruling on October 28, 1980, R & H's second amended and supplemental complaint was filed, and active proceedings in this case resumed.

Following the *Dawson* decision, litigation also resumed in the Houston case as well. That district court ultimately determined the validity and infringement issues in favor of R & H, in a decision of January 5, 1983. *Rohm and Haas Co. v. Dawson Chemical Co., Inc.*, 557 F.Supp. 739, 217 USPQ 515 (S.D.Tex.1983). The decision was reversed by this court *sub nom Rohm and Haas Co. v. Crystal Chemical Co.*, 722 F.2d 1556, 220 USPQ 289 (Fed.Cir. 1983), (the *Crystal* decision) on December 7, 1983, on the ground that the propanil patent was invalid because of fraud in the Patent and Trademark Office (PTO) committed during its prosecution.

In the instant New Orleans case, R & H moved for and was granted a partial summary judgment as to the non-damages issues, as will be discussed below, on March 22, 1982. Following a non-jury trial, and subsequent to the January decision of the Texas court, final judgment was entered on March 1, 1983, in favor of R & H for

damages in the amount of $402,095 plus interest. An amended judgment of March 30, 1983 awarded $833,121 plus interest to R & H.

Additional details and background information on the circumstances of these interrelated cases may be found in the *Dawson* decision and the *Crystal* decision. Familiarity with the substantive background and procedural history of this case will be presumed.

Timely appeals were taken from both of the district court proceedings. Because our decision in *Crystal* issued subsequent to submission of briefs and the oral arguments in the instant case, we requested and received from the parties supplemental briefs discussing what effect, if any, that decision has on this case.

### 2. *Proceedings Below*

In its Answer to the Second Amended and Supplemental Complaint alleging infringement of the propanil patent, T–H denied that the patent "was duly or legally issued." However, T–H also stated that:

(13) In the further proceedings of this cause, defendant *will not contest and will not offer evidence in opposition to the following allegations* that have been pleaded by plaintiff:

(1) that plaintiff Rohm and Haas is the owner of U.S. Letters Patent No. 3,816,092;

(2) *that U.S. Letters Patent No. 3,816,092 is valid;* and

(3) *that defendant's sales of propanil* in the period from June 11, 1974 to April 1979, *if not then licensed or permitted as a matter of law, constituted infringement* of U.S. Letters Patent No. 3,816,092. [Emphasis ours.]

Thus, while T–H did not contest validity of the propanil patent, neither did it admit validity. Significantly, T–H never raised the affirmative defense that the propanil patent was invalid or unenforceable because of fraud in its procurement.

In a Pre-Trial Order dated March 4, 1983, the trial court noted that the parties had been unable to agree on certain language as to issues for trial for inclusion in that order, and therefore it attached their "suggested" paragraphs as exhibits. It was further noted that the pretrial order controlled the course of the trial and "may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice."

T–H suggested that:

16. The trial of this case will be limited to the issue of damages.

Defendant has informed plaintiff and the Court of its desire to limit the issues to be tried by the Court to (1) defendant's liability for damages; and (2) the fixing and liquidation of damages, *and has previously proposed to stipulate* solely for the purposes of this action that:

(1) Rohm and Haas is and has been since the date of its issuance the sole owner of all right, title and interest in U.S. Patent No. 3,816,092 (the "Wilson patent");

(2) *The Wilson patent was duly issued to Rohm and Haas and is good and valid in law;*

(3) Except as to Thompson-Hayward's contentions of nonliability for damages as pleaded in the answer to the second amended and supplemental complaint which are disputed by Rohm and Haas, the Wilson patent is enforceable against Thompson-Hayward;

(4) Thompson-Hayward contributorily infringed and induced infringement of the Wilson patent by its sales of propanil in the period from June 11, 1974 to April 1979; and

(5) *Thompson-Hayward reserves any and all rights for dismissal of this action or for relief from judgment in this action that may arise in law or equity in the event of a final adjudication in the Texas action adverse to Rohm and Haas with respect to validity, scope or enforceability of the Wilson patent.* [Emphasis ours.]

In its alternative suggested language as to the scope of issues presented for trial, R

& H agreed in part, but it contended "that the trial of this case is limited to damages only *because defendant has repeatedly stated it will not contest the issues of liability (validity, enforceability and infringement)* and such issues must therefore be considered in plaintiff's favor." (Emphasis ours.) R & H further acknowledged that T–H "had previously proposed to stipulate" to the five items in paragraph 16, above, but did not in fact so stipulate. Additionally, in response to T–H's suggested language for the order that it "shall be permitted to supplement this Pre-Trial Order after the complete trial transcript has been made available" to it from the *Crystal* case, R & H contended that T–H "has no such right." On this appeal, T–H has made no showing that the pleadings or pre-trial order have been modified or in any way amended in view of proceedings in the district court in *Crystal.*

In the district court's Reasons for Judgment accompanying its grant of summary judgment to R & H entered on March 22, 1982 on these non-damages issues, the court noted that it was "without any evidence to rebut" the allegations by R & H that it was the owner of the propanil patent, that the propanil patent was valid and enforceable, and that T–H "contributorily infringed and actively induced infringement of the Wilson patent." The court's judgment was predicated upon Rule 56 of the Federal Rules of Civil Procedure concerning summary judgment, in that "[a]s to the first three issues upon which plaintiff seeks summary judgment, *Thompson-Hayward* has *raised no substantial opposition, and in fact, has offered to stipulate to such,* with the reservation that the stipulation would not affect any contrary determination by the District Court in Houston, which at this time, is still pending." (Emphasis ours.) Thus, the court acknowledged T–H's offer to stipulate, but based its decision on the lack of rebuttal evidence by T–H in response to R & H's allegations, not on a stipulation by the parties. In this judgment, the Supreme Court's decision in *Dawson* was also held to apply retroactively.

T–H's Notice of Appeal in this cause was filed April 29, 1983 in the district court, and docketed at this court on May 9. Pursuant to Rule 3(c) of the Federal Rules of Appellate Procedure (FRAP) such a notice "shall designate the judgment, or part thereof appealed from." The notice filed by T–H clearly recites, in part, "the JUDGMENT entered in this action on March 22, 1982 granting plaintiff's [R & H's] motion for partial summary judgment." By this document, R & H was reasonably placed on notice that the entire summary judgment was on appeal, not just the part of that judgment concerning the retroactive application of the *Dawson* decision.

However, T–H's Statement of the Issues It Intends To Present For Review, submitted pursuant to Rule 10(b)(3) of FRAP, omits the issues of validity, enforceability, and infringement which were decided in the partial summary judgment of March 22, 1982. The only issue presented for appeal from the partial judgment concerned the retroactive effect of *Dawson.* Similarly, the Statement of the Issues in T–H's brief does not include validity, enforceability, or infringement, although an explanatory footnote in the brief states that:

Thompson-Hayward did not contest validity and infringement of the Wilson patent in the proceedings below because such issues were being prepared for trial in the Texas case and Thompson-Hayward was willing to be bound by the determination of such issues in Texas should such determination be in favor of Rohm and Haas. On the other hand, if such determination in Texas were adverse to Rohm and Haas, such determination would be controlling against Rohm and Haas in the case at bar in accordance with the principles of *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313 [91 S.Ct. 1434, 28 L.Ed.2d 788] (1971). Repetition and duplication of discovery and trial on such issues in both New Orleans and Texas was unnecessary and would be excessively burdensome to Thompson-Hayward and the Court.

Having departed from the propanil business and having no interest in the future of the propanil market or of the Wilson patent, Thompson-Hayward was not in a position to assert that such duplication of discovery and trial might be avoided by trial of such issues in New Orleans rather than in Texas.

### 3. *Our* Crystal *decision*

For the purposes of this case, we highlight selected excerpts from *Crystal* for the elements necessary to the instant disposition.

In response to the submission of falsified affidavits by R & H to the patent examiner, quoting Crystal's brief, we noted that: "... the rejections over the Fischer, the CBCC article and the Bielstein reference were withdrawn, the broadest, primary claim ... was held allowable .... These prior art references were never again asserted by any PTO Examiner as a basis for rejecting or limiting any claims." [722 F.2d at 1562, 220 USPQ at 294.] We also noted that "[i]t cannot be disputed that the purpose of the affidavits was to overcome prior-art rejections that had been entered by the examiner." 722 F.2d at 1570, 220 USPQ at 300. Ultimately, we concluded that the propanil patent is "invalid because of fraud in the Patent and Trademark Office in its procurement." 722 F.2d at 1573, 220 USPQ at 302.

### 4. *Contentions of the Parties as to the Effect of this Court's* Crystal *Decision*

#### a. *Thompson-Hayward:*

T-H argues primarily that R & H is now collaterally estopped in the instant case "to recover damages for infringement of its patent that has been held invalid and that the judgment for damages and interest herein appealed should be reversed." Noting that this is a case of first impression, T-H nevertheless does "not perceive any substantial procedural or jurisdictional limitations on the proposition that this Court will reverse or preclude further enforcement of any judgment on appeal to this Court for infringement damages or other relief in respect of a patent which this Court, pursuant to a substantive determination on the merits, has already held to be invalid."

In support of this proposition, T-H relies heavily on the Supreme Court's decision in *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788, 169 USPQ 513 (1971). *Blonder-Tongue* eliminated the doctrine of mutuality of estoppel as to patent infringement litigation in district court proceedings subsequent to a holding in another court as to a patent's invalidity. T-H submits that this policy should be enlarged to apply to the present circumstances. T-H notes correctly that this court has applied *Blonder-Tongue* when a decision as to patent invalidity preceded any judgment in another district court case appealed here.

T-H also suggests that stare decisis, based on our *Crystal* decision, controls the instant appeal, in that this court has nationwide jurisdiction over patent infringement appeals pursuant to the Federal Courts Improvement Act by which this court was created. Whether collateral estoppel or stare decisis is applied, T-H contends that in the instant case the judgment of infringement rests only upon a "procedural and non-substantive ruling" and that the district court should be reversed.

In further support of its contentions, T-H notes that it gave notice of appeal from the judgment as to validity and infringement because such judgment was embodied in the district court's final judgment of March 25, 1983. T-H believes that it "gave further explicit notice in its main brief on this appeal ... that Thompson-Hayward would at a future date assert collateral estoppel by judgment in the Texas litigation when and if such collateral estoppel might arise." (See T-H's footnote reproduced above for this notice.)

T-H also notes that it did not *admit* that the Wilson patent was valid in its pleadings, but merely refused to contest validity. T-H submits that it "opposed the motion

for summary judgment on validity and infringement as being premature until there had been a final determination on the merits in the Texas case ...." However, T-H has not appealed or contested any action by the district court as to the scheduling or calendar below as being an abuse of discretion.

Finally, T-H contends that considerations of equity and fairness are overwhelmingly in its favor and calls for reversal of the damage award.

b. *Rohm and Haas*

R & H notes that the defense of misconduct in the PTO upon which Crystal ultimately prevailed was known and available to T-H, had it chosen to plead this or other substantive defenses. Instead, because T-H did not contest R & H's allegations of validity and enforceability, R & H thus contends that "Thompson-Hayward does not receive a second opportunity to assert any such defense merely because of a *later decision* adverse to the patent." In support of its position, R & H invokes the "strong policy in favor of finality of judgments" which "dictates that it should not be disturbed." Accordingly, because T-H "had judgment rendered against it on validity and enforceability in the court below, and thereafter it did not preserve any remaining rights because it failed to appeal such summary judgment rulings, ... the outstanding judgment of the District Court on validity and enforceability is indubitably 'final'."

In support of its position on finality, R & H relies primarily upon our decision in *Smith International, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 219 USPQ 686 (Fed. Cir.), *cert. denied* — U.S. ——, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983), discussed below, in which we held that because issues were not appealed on the finding of infringement, they were thereby rendered final and conclusive.

R & H also contends that the *Blonder-Tongue* doctrine is unavailing here.

[T]here is no principle of law in *Blonder-Tongue* or any other case which permits

Thompson-Hayward to resurrect a known but abandoned defense because of a later favorable result in collateral litigation. Litigants must constantly make elections and observe procedural rules and deadlines. It is not the function of an appellate court to save Thompson-Hayward from the consequences of its deliberate and knowing decisions which *in retrospect* may be proven wrong or unwise. The finality of the summary judgment supersedes any wishful thinking or second thoughts by the party against which it was entered. There is nothing unfair in Thompson being the victim of its own strategy.

    \*    \*    \*    \*    \*    \*

A litigant cannot stand to one side, waive its rights and ignore its obligations, relying solely on the hope that other parties in another case will do its work for it. Each party must assert its own position at the appropriate time or suffer the consequences.

## II.

The issue of the applicability of our decision in the *Crystal* case that the propanil patent was invalid and would not have issued had not falsified affidavits been presented to the examiner during prosecution raises fundamental but opposed policy matters, neither of which is necessarily transcendant as a matter of logic.

The public interest in an efficient and effective administration of justice requires adherence to the Federal Rules of Civil Procedure, and to the general proposition that conceded or unappealed issues are not reviewable. However, this case compels us also to consider the strong public interest in not countenancing fraud in the PTO, and accordingly refusing to award damages for infringement of an invalid patent. Our decision herein is predicated upon our balancing these policy matters in favor of the latter.

In *Lear, Inc. v. Adkins*, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610, 162 USPQ 1 (1969) the Supreme Court overturned the

doctrine of licensee estoppel. The Court noted "the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain." 395 U.S. at 670, 89 S.Ct. at 1911, 162 USPQ at 8. In *Lear*, the public's interest in allowing challenges to invalid patents was determined to prevail over the principles of contract law. In *Crystal*, we recognized that "[s]urely, a very important policy consideration is to discourage all manner of dishonest conduct in dealing with the PTO." 722 F.2d at 1571, 220 USPQ at 301. Given the particular circumstances in this case, the public interest in enforcing adherence to the duty of candor in the PTO militates strongly in favor of our not affirming the holding of validity below and not requiring damages to be paid for infringement of the propanil patent. Under these circumstances, we deem this public interest to be paramount over the proprieties of pleading practice. We need not and do not make a distinction here between "invalidity" and "unenforceability" because, under either label, the result in this case would be the same. *See American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1364 n. 5, 220 USPQ 763, 774 n. 5 (Fed.Cir.1984).

R & H relies primarily upon the case of *Smith International*, supra, as being determinative of this court's general position on the effect of an infringer's failure to appeal an adverse holding on the issue of infringement. In *Smith*, the patentee appealed the district court's denial of a motion for a preliminary injunction to prevent continued infringement of two patents. These patents had originally been held invalid, but the Ninth Circuit Court of Appeals had reversed the district court and declared them to be valid in an earlier proceeding. *Smith International, Inc. v. Hughes Tool Company*, 664 F.2d 1373, 215 USPQ 592 (9th Cir.), *cert. denied*, 456 U.S. 976, 102 S.Ct. 2242, 72 L.Ed.2d 851 (1982). Based on a Pre-Trial Conference Order (prior to the decision appealed to the Ninth Circuit), in which infringement had been admitted, the fact of infringement was not an issue to be tried if the patents were determined to be valid. Accordingly, on remand from the Ninth Circuit, the district court acknowledged the admission of infringement, although it did not enter judgment on this issue. On appeal of the denial of the preliminary injunction, this court said:

The inclusion of Smith's admissions in the district court's pre-trial orders amounts to an adjudication that Smith had infringed the patents. Under Fed.R. Civ.P. 16, those orders controlled the subsequent course of action, unless modified. Here, no modification occurred. Those orders were merged into the final declaratory judgment of the district court. *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 546 [69 S.Ct. 1221, 1225, 93 L.Ed. 1528] ... (1949). No issue relating to infringement was appealed by Smith to the Ninth Circuit Court, thus rendering the district court's adjudication of infringement final and conclusive. *Richardson v. Communications Workers of Amer. AFL–CIO*, 486 F.2d 801, 804 (8th Cir.1973); *Atchison, Topeka and Santa Fe Railway Co. v. Jackson*, 235 F.2d 390, 392 (10th Cir.1956). We see no reason why any further adjudication on the *fact* of infringement is needed. [718 F.2d at 1580, 219 USPQ at 691–2, footnote omitted.]

We note, however, differences between the factual situation obtaining in *Smith* and that of the instant case. In *Smith*, the infringer admitted infringement; here, T–H denied that the propanil patent was legally issued, but did not contest validity or infringement. More compelling is the distinction that in *Smith*, we said that "[w]e see no reason why any further adjudication on the *fact* of infringement is needed." (Emphasis in original.) 718 F.2d at 1580, 219 USPQ at 692. In the instant case, public policy requires consideration of our *Crystal* decision that the patent was erroneously issued.

Having noted R & H's objections to the application of *Blonder-Tongue* principles to this case, we review the Supreme Court's rationale for that decision. The policy be-

hind *Blonder-Tongue* is apt and instructive here, although its holding is not directly on point.

In *Mississippi Chemical Corp. v. Swift Agricultural Chemicals Corp.*, 717 F.2d 1374, 219 USPQ 577 (Fed.Cir.1983), this court explained the Supreme Court's decision in *Blonder-Tongue.*

In *Blonder-Tongue*, the Supreme Court held that where a patent has been declared invalid in a proceeding in which the "patentee has had a full and fair chance to litigate the validity of his patent" (402 U.S. at 333 [91 S.Ct. at 1445] ...), the patentee is collaterally estopped from relitigating the validity of the patent. [717 F.2d at 1376, 219 USPQ at 579.]

    \*    \*    \*    \*    \*    \*

The essence of the *Blonder-Tongue* principle is to prevent relitigation of patent validity in a second trial after the patentee has lost on that issue in a full and fair trial. [717 F.2d at 1380, 219 USPQ at 582.]

See also *Stevenson v. Sears, Roebuck & Co.*, 713 F.2d 705, 709–10, 218 USPQ 969, 972–4 (Fed.Cir.1983).

While the policy of preventing the relitigation of patent validity is not precisely involved here, since T–H chose not to litigate validity, we note other language by the Court in *Blonder-Tongue.*

[A]s so often is the case, no one set of facts, no one collection of words or phrases, will provide an automatic formula for proper rulings on estoppel pleas. In the end, decision will necessarily rest on the trial courts' sense of justice and equity. [402 U.S. at 333–34, 91 S.Ct. at 1445, 169 USPQ at 521.]

We therefore find no bar, because of *Blonder-Tongue* or otherwise, to the application of our holding of invalidity of the propanil patent in *Crystal* to the same patent in this case.

Additionally, and to the extent that our disposition of this case is undertaken *sua sponte*, notwithstanding the proceedings below, we note that this court has acted similarly in another case involving fraud in the PTO, in which, despite the lack of objection below to certain jury instructions, we held that "to allow a jury verdict of fraud to stand on these instructions would be a great injustice." *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1364, 220 USPQ 763, 774 (Fed.Cir. 1984).

Accordingly, given this court's determination in *Crystal* that the propanil patent was always invalid, the judgment of the district court is vacated and the case remanded with instructions to dismiss the complaint.

VACATED AND REMANDED.