**SMITH INTERNATIONAL, INC., etc., Appellant,**

**v.**

**HUGHES TOOL COMPANY, Appellee.**

**Appeal Nos. 84–1094, 84–1767.**

United States Court of Appeals, Federal Circuit.

April 30, 1985.

Rolf Stadheim, Haight, Hofeldt, Davis & Jambor, Chicago, Ill., argued for appellee. With him on the brief were Britton A. Davis and Dorsey L. Baker, Chicago, Ill.; David B. Toy; Steven O. Kramer, Lawler, Felix and Hall, Los Angeles, Cal., of counsel.

Before FRIEDMAN, BENNETT and MILLER, Circuit Judges.

FRIEDMAN, Circuit Judge.

These consolidated appeals challenge orders of the United States District Court for the Central District of California that (1) refused to dissolve a preliminary injunction against patent infringement, (2) denied a motion for summary judgment that the patents are invalid because they had been procured by fraud on the Patent Office or are unenforceable because the patentee's action before that Office constituted inequitable conduct, and (3) barred the infringer in the relief phase of the case from introducing any evidence relating to the latter contention. We affirm in part and dismiss the appeals in part.

I

A. The Prior Proceedings.

In 1972, the appellant, Smith International, Inc. (Smith), filed in the United States District Court for the Central District of California a complaint against the appellee, Hughes Tool Company (Hughes), seeking a declaratory judgment that Hughes' U.S. Patent No. 3,397,928 (the '928 patent) was invalid. Hughes filed a counterclaim asserting that Smith had infringed both the '928 patent and Hughes U.S. Patent No. 3,476,195 (the '195 patent). Both patents are directed to "rock bits," which are earth-boring tools used in the drilling of oil and gas wells. Hughes' counterclaim sought damages and injunctive relief.

In its answer and during pretrial proceedings, Smith admitted that devices it manufactured infringed certain claims of the two patents, but asserted that the patents were invalid and unenforceable.

Ned L. Conley, Butler & Binion, Houston, Tex., argued for appellant. With him on the brief were Jeffrey W. Tayon, William E. Shull, David S. Wise and Gregorey L. Maag, Houston, Tex.; Charles Alan Wright, Austin, Tex., of counsel.

Following the trial in 1977, the district court held in 1979 that the two patents were invalid and dismissed Hughes' counterclaim. The court found that certain of Hughes' "submittals" to the Patent Office "did not, in some material respects, meet the applicant's uncompromising duty to make a full and fair disclosure of all facts which may affect the patentability of his invention" (finding 29). It found that the '928 patent was invalid because, among other reasons, "(a) invalidating prior art ... [was] not before the examiner and (b) the failure by Hughes to make a fair and full disclosure materially prevented the examiner from properly interpreting the prior art which was before him" (finding 32). The court, however, eliminated from Smith's proposed Conclusions of Law No. 3, which read:

> Hughes['] failure to make a full and fair disclosure to the Patent Office constituted fraud on the Patent Office and makes the claims of the seal ['928] patent invalid.

The Court of Appeals for the Ninth Circuit reversed, holding that Smith had failed to meet its burden of proving that either patent was invalid. *Smith International, Inc. v. Hughes Tool Company*, 664 F.2d 1373, 215 USPQ 592 (9th Cir.), *cert. denied*, 456 U.S. 976, 102 S.Ct. 2242, 72 L.Ed.2d 851 (1982) (*Smith I*). The court noted that the district court had "adopted almost verbatim and used as its opinion the proposed findings of Smith International" and that "[t]he Ninth Circuit has repeatedly held that adopted findings require increased appellate scrutiny." *Id.* at 1375, 215 USPQ at 593–94. The "Conclusion" of the court's opinion read as follows:

> The judgment is reversed, and Patents '928 and '195 are declared to be valid. The Hughes counterclaim for infringement is reinstated, and the cause is remanded for further proceedings on the counterclaim.

*Id.* at 1377, 215 USPQ at 595.

Following the remand, Hughes moved for entry of judgment in its favor, on the ground that Smith had admitted infringement of both patents. It also sought a preliminary injunction. The district court

agreed that Smith had conceded infringement, but it declined to enter judgment for Hughes. It concluded that it was "appropriate, rather, to proceed to a determination of the nature and the scope of plaintiff's infringement before entering judgment." No. 72–1231 HLH (Order of Oct. 6, 1982), *quoted in Smith International, Inc. v. Hughes Tool Company*, 718 F.2d 1573, 1577, 219 USPQ 686, 689 (Fed.Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983) (*Smith II*). The court declined to enter a preliminary injunction, "because it considered Smith's admission of infringement to be too general to meet the requirement of specificity for injunctive relief under Fed.R.Civ.P. 65(d)." *Smith II*, 718 F.2d at 1577, 219 USPQ at 689 (describing order of the district court). "[T]he court specifically rejected Smith's argument that there had been no determination of infringement." *Id.*

Hughes appealed the denial of the preliminary injunction to this court. We reversed and remanded the case "with instructions to issue an appropriate preliminary injunction enjoining Smith International, Inc. from infringing claim 1 of the '928 patent on such terms as are deemed proper by the district court." *Id.* at 1582, 219 USPQ at 693. We pointed out that "the validity of the Hughes patents has been adjudicated by a competent appellate court, which we assume considered all possible grounds for invalidating the patents, and yet it rejected them all," *id.* at 1579, 219 USPQ at 691, and that "[t]he Ninth Circuit Court's decision removed any question about the validity and enforceability of the patents," *id.* at 1580, 219 USPQ at 691. In a footnote, we stated:

> The reinstatement of the Hughes counterclaim by the Ninth Circuit Court, and its remand for further proceedings, in no way indicates that the court viewed the fact of infringement as an open question. In our view, the "further proceedings" provision in the remand order refers to an accounting proceeding and a consideration of the matter of a permanent injunction. No further proceedings are

necessary on the issue of whether infringement occurred.

*Id.* at 1580, 219 USPQ at 692.

B. The Present Appeals.

After the district court entered the preliminary injunction pursuant to our mandate, Smith moved the court (1) to grant partial summary judgment in its favor or alternatively to order a separate trial, and (2) to dissolve the preliminary injunction. Both motions were based on the contention that Hughes committed fraud on the Patent Office in obtaining the '928 patent. (Although, as discussed *infra*, p. 1578, this court has indicated that the term "inequitable conduct" is more appropriate than "fraud" in referring to proscribed conduct before the Patent and Trademark Office, in the interest of accuracy we use the term "fraud" in this opinion only where the court or the parties have used that term.) In April 1984, the district court denied the motions.

The court held that the law of the case barred Smith from now litigating the issue of fraud before the Patent Office. The court ruled that "the Ninth Circuit's decision that '928 is valid by clear implication decided the issue of fraud against Smith." The court further held that Smith had not provided "new evidence" that, under an exception to the law-of-the-case doctrine, would justify the court in reopening the question. The court concluded that the "new evidence" upon which Smith relied, was unavailable for that purpose because it either could have been provided at the earlier trial or merely was cumulative to the evidence already in the record.

The appeal in No. 84–1094 is from the order denying those motions.

In February 1984, Hughes moved in the district court to hold Smith in contempt of the preliminary injunction for manufacturing and selling a new device under Smith's U.S. Patent No. 4,372,629 which, according to Hughes, infringed the '928 patent. Prior to filing the motion, Hughes had amended its counterclaim to allege this new infringement. In apparent anticipation of the hearing on those issues, Hughes filed a motion *in limine* to preclude Smith from introducing any evidence relating to Hughes' alleged fraud on the Patent Office. Smith again moved to dissolve the preliminary injunction, relying on additional "newly discovered" evidence of fraud.

In September 1984, the district court entered an order barring Smith from introducing such evidence. The court also denied Smith's motion to dissolve the preliminary injunction.

The appeal in No. 84–1767 is from those two orders.

The trial of the contempt and infringement proceedings, which the district court combined, began in September. On October 16, the district court dismissed the contempt charge, ruled that the infringement trial would go forward, and recessed the trial to November 27. Smith then sought from us a writ of prohibition to prevent the district court from proceeding with the trial. We denied the writ on November 21. The trial of the infringement issue then went forward, and as far as we are aware that issue has not been decided.

## II

The district court's refusal to dissolve the preliminary injunction was grounded on the court's conclusion that the decision of the Ninth Circuit in *Smith I*, as we interpreted it in *Smith II*, established as the law of the case that the patent had not been obtained through fraud on the Patent Office and that the exception to the law of the case for newly discovered evidence was unavailable to Smith. We have authority to review those orders under 28 U.S.C. 1292(a)(1) (1982) as "orders ... refusing to dissolve ... injunctions."

It is doubtful whether the district court had any authority to dissolve the preliminary injunction, which it had entered not in the exercise of its own discretion but in compliance with our mandate. 1B J.W. Moore, *Moore's Federal Practice*, ¶ 0.404[10] (1984). *Cf. Northern Helex Company v. United States*, 634 F.2d 557, 560, 225 Ct.Cl. 194 (1980). In order to expedite the final decision of this protracted litigation, however, we pretermit the

question of the district court's authority to dissolve the preliminary injunction and review the merits of its refusal to do so.

The other orders from which appeal has been taken are those (1) barring Smith from introducing evidence relating to Hughes' alleged fraud on the Patent Office, and (2) denying summary judgment that the patents are invalid or unenforceable because obtained by fraud. The appealability of the former order is doubtful. The latter order clearly is nonappealable. *E.g., President and Directors of Georgetown College v. Madden,* 660 F.2d 91 (4th Cir.1981); *Valdosta Livestock Co. v. Williams,* 316 F.2d 188 (4th Cir.1963).

Our affirmance of the district court's holding that the Ninth Circuit's decision in *Smith I* that the patents are neither invalid nor unenforceable is the law of the case makes it unnecessary to consider the validity of the other orders, since the challenges to those orders rest on the same grounds. We shall therefore dismiss the appeals insofar as they challenge those orders.

### III

■ The law-of-the-case doctrine is well established in the patent jurisprudence of this court. *Perkin-Elmer Corp. v. Computervision Corp.,* 732 F.2d 888, 900–01, 221 USPQ 669, 678–79 (Fed.Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984); *Central Soya Co. v. Geo. A. Hormel & Company,* 723 F.2d 1573, 1580–81, 220 USPQ 490, 495 (Fed.Cir. 1983). The doctrine is that

> as a matter of sound judicial practice, under which a court generally adheres to a decision in a prior appeal in the case unless one of three "exceptional circumstances" exists: "the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice."

*Central Soya, supra,* 723 F.2d at 1580, 220 USPQ at 495, *quoting from Short v. United States,* 661 F.2d 150, 154, 228 Ct.Cl. 535 (Ct.Cl.1981), *cert. denied sub nom. U.S. v.*

*Short* and *Hoopla Valley Tribe of Indians v. Short,* 455 U.S. 1034, 102 S.Ct. 1738, 72 L.Ed.2d 153 (1982). *United States v. Turtle Mountain Band of Chippewa Indians,* 612 F.2d 517, 222 Ct.Cl. 1 (1979). The doctrine is designed "to provide finality to judicial decisions." *Turtle Mountain Band of Chippewa Indians,* 612 F.2d at 521.

In its decision following our remand in *Smith II,* the district court held that under the law of the case the decision of the Ninth Circuit in *Smith I* barred Smith from now litigating the issues of Hughes' alleged fraud on the Patent Office or the alleged unenforceability of the patents because of Hughes' conduct before that Office. Smith challenges that ruling on three grounds: (A) that the Ninth Circuit did not decide the question of fraud, but that in any event the Ninth Circuit's decision is not the law of the case with respect to enforceability; (B) that there now is available evidence of fraud that is "sufficiently different" from the evidence before the Ninth Circuit so as to bring this case within the exception to the law-of-the-case doctrine for such evidence; and (C) that the decision of the Ninth Circuit reversing one of the grounds upon which the district court initially had invalidated the patent was "clearly erroneous and would work a manifest injustice."

### A. Fraud and Unenforceability.

■ 1. In defending the district court's initial determination of patent invalidity in *Smith I,* Smith argued in its brief before the Ninth Circuit, based on the findings of the district court discussed above (*supra,* p. 1573), that in prosecuting the application for the '928 patent, Hughes failed to inform the Patent Office about relevant prior art and misled it regarding the "true import" of that art, and that this "was conduct which was a serious breach of a patentee's duty to the Patent Office." It then stated:

> While the district court did not hold the seal ('928) patent invalid on the basis of those findings ..., it is submitted that

this Court should do so on the separate ground of fraud on the Patent Office.

Although in reversing the district court the Ninth Circuit did not discuss the fraud issue, we agree with the district court that "the Ninth Circuit's decision that [the] '928 [patent] is valid by clear implication decided the issue of fraud against Smith."

■ In order to hold the patent valid, as it did, the Ninth Circuit necessarily must have rejected all the grounds upon which Smith challenged validity and sought to uphold the contrary decision of the district court. One of those grounds was that in obtaining the patent Hughes committed fraud before the Patent Office. Although the law-of-the-case doctrine "applies only to issues that were decided in the former proceeding but not to questions which might have been decided but were not," it " 'comprehends things *decided by necessary implication* as well as those decided explicitly.' " *Morrow v. Dillard*, 580 F.2d 1284, 1290 (5th Cir.1978), *quoting from Carpa, Inc. v. Ward Foods, Inc.*, 567 F.2d 1316, 1320 (5th Cir.1978) (emphasis in original). *E.g., Maggard v. O'Connell*, 703 F.2d 1284 (D.C.Cir.1983); *Fogel v. Chestnutt*, 668 F.2d 100 (2d Cir.1981), *cert. denied*, 459 U.S. 828, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982); *City of Cleveland v. Federal Power Commission*, 561 F.2d 344 (D.C.Cir.1977); *Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16 (5th Cir.), *reh'g denied*, 496 F.2d 878, *cert. dismissed*, 419 U.S. 987, 95 S.Ct. 246, 42 L.Ed.2d 260 (1974). 1B *Moore's Federal Practice*, ¶ 0.404[10]. As we pointed out in *Smith II*, in upholding the validity of the patent in *Smith I* the Ninth Circuit "assume[dly] considered all possible grounds for invalidating the patents, and yet it rejected them all."

Smith points out that courts properly do not hold patents valid but instead hold that the alleged infringer has not shown them to be invalid. *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 762, 221 USPQ 473, 480 (Fed.Cir.1984). It therefore concludes that the Ninth Circuit decision cannot have the effect the district court ascribed to it. Although the language the Ninth Circuit used may have been infelici-

tous, its meaning was clear. By reversing the district court's determination of invalidity and remanding for further proceedings on the reinstated counterclaim, the Ninth Circuit, as we stated in *Smith II*, "removed any question about the validity and enforceability of the patent."

Smith asserts that in *Mutual Life Insurance Co. v. Hill*, 193 U.S. 551, 24 S.Ct. 538, 48 L.Ed. 788 (1904),

the Supreme Court held that once an appellate court reverses and remands a decision of the trial court, as in this case, the law of the case is established by the appellant court's decision only for "questions in terms discussed and decided." *Id.* at 553–54 [24 S.Ct. at 538–39]. This case supports Smith's position that the issue of invalidity due to fraud was not decided by the Ninth Circuit's 1982 opinion because the issue of fraud was not discussed and decided, and as such, is not law of the case.

Smith overstates the holding in that case. All the Supreme Court stated was that "a judgment of reversal is not necessarily an adjudication by the appellate court of any other than the questions in terms discussed and decided." *Id.* at 553–54, 24 S.Ct. at 538–39. In the present case, as we have shown and as we implicitly held in *Smith II*, the Ninth Circuit's decision in *Smith I* that the '928 patent is valid, in the language of the district court in the order under review, "by clear implication decided the issue of fraud against Smith." Moreover, as we have noted, the current view is that a decision is the law of the case not only with respect to "questions in terms discussed and decided" but also questions decided by necessary implication.

2. Smith argues that even if the Ninth Circuit's rejection of the fraud contention is the law of the case, that decision does not bar Smith from now litigating its contention that the patents are unenforceable because of Hughes' alleged misconduct before the Patent Office. It asserts that fraud before the Patent Office and misconduct before that Office that makes a patent unenforceable are separate and distinct

grounds of defense to a charge of infringement. It refers to section 282 of the patent laws, which provides that in patent validity or infringement suits, unenforceability and invalidity are separate defenses. At oral argument, however, Smith conceded that the facts underlying its claim of unenforceability are the same as those upon which its claim of fraud rests.

This court recently stated that "inequitable conduct" is a more appropriate term than "fraud" for describing conduct before the Patent and Trademark Office that renders a patent unenforceable, since "inequitable conduct" "encompasses affirmative acts of commission, e.g., submission of false information, as well as omission, e.g., failure to disclose material information." *J.P. Stevens & Co., Inc. v. Lex Tex Ltd., Inc.*, 747 F.2d 1553, 1559, 223 USPQ 1089, 1092 (Fed.Cir.1984). We further held that the inequitable conduct defense "results in unenforceability," not invalidity. *Id.*, 747 F.2d at 1560, 223 USPQ at 1093.

■ Whatever validity the distinction between "fraud" (as Smith defines that term) and inequitable conduct still may retain in the context of activities outside the Patent and Trademark Office, we hold that the Ninth Circuit's determination that Hughes did not obtain the patent by fraud on the Patent Office is the law of the case also with respect to the contention that the same conduct upon which the claim of fraud was based constituted inequitable conduct that made the patent unenforceable. The reasons that led the Ninth Circuit to conclude that those facts did not establish fraud also require the same conclusion with respect to unenforceability.

■ 3. Smith refers to the public interest in protecting the integrity of the patent issuing process and preventing the enforcement of patents secured by fraud. *See Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 816, 65 S.Ct. 993, 998, 89 L.Ed. 1381 (1945); *Rohm and Haas Company v. Crystal Chemical Company*, 722 F.2d 1556, 1571, 220 USPQ 289, 301 (Fed. Cir.1983), *cert. denied*, — U.S. —, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984). It sug-

gests in effect that an exception to the law-of-the-case doctrine should be permitted to enable it to relitigate the validity of the Hughes patents to show they were obtained through fraud. We reject the suggestion. The law-of-the-case doctrine rests upon weighty considerations of sound judicial administration, and its application should not and cannot depend upon the nature of the issue that a party seeks to relitigate.

**B. New Evidence.**

In seeking to dissolve the preliminary injunction, Smith relied upon certain "new evidence," of which it asserted it had become aware only recently. The district court held that under Ninth Circuit law

[i]ssues resolved by the judgment of the Court of Appeals may not be reopened for the admission of additional evidence unless that evidence is newly discovered within the meaning of Rule 60(b)(2). *Corex Corp. v. United States*, 638 F.2d 119 (9th Cir.1981). "New evidence" under the rule must be evidence ... that could not have been produced by due diligence during the trial or in time to move for a new trial under Rule 59(b), and that is not merely cumulative.

As noted, the district court concluded—correctly, as we have held—that the Ninth Circuit's decision upholding the validity of the '928 patent "by clear implication decided the issue of fraud against Smith." The court accordingly then proceeded to "determine whether Smith has presented any 'new evidence' within the meaning of the law of the case doctrine. If there is no such new evidence, this Court is strictly bound by the mandate" of the Ninth Circuit in *Smith I*.

The court reviewed at some length the four items of "new evidence" upon which Smith relied to show fraud on the Patent Office. The court concluded that Smith either was aware of this new evidence or could have discovered it by reasonable diligence before the trial of the case in 1977, or that the evidence was merely cumulative

of the evidence already in the record. On the basis of this review, the court concluded:

> Smith has no "new evidence." In the absence of "new evidence," this Court is bound by the mandates of the Ninth and Federal Circuits.

Before this court, Smith does not challenge the district court's determination that all of its new evidence either was, or with reasonable diligence could have been, known to it long ago, or was merely cumulative. Instead, it argues that the district court erred in applying that standard in denying its motions. Smith contends that Rule 60(b) is inapplicable because it covers only modifications of final judgments, that the only final judgment in the case was the district court's 1979 judgment holding the patents invalid, and that the Ninth Circuit's reversal of that judgment eliminated it. Smith further argues that because the ground for the exception to the law-of-the-case doctrine is the existence of "substantially different" and not "newly discovered" evidence, it was improper for the district court to apply the latter standard in considering Smith's motions to dissolve the preliminary injunction.

Rule 60(b)(2) permits the court to relieve a party from a final judgment for "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." The "due diligence" limitation serves the salutary purpose of providing finality to judicial decisions and orders by preventing belated attempts to reopen judgment on the basis of facts that the moving party could have discovered at the time of trial.

■ We cannot say that the district court abused its discretion or otherwise committed reversible error in applying the "newly discovered" evidence standard of Rule 60(b)(2) in determining that Smith had not shown the existence of "substantially different" evidence that justified an exception to the law-of-the-case doctrine. As

noted, the law-of-the-case doctrine is designed to "provide finality to judicial decisions." *Supra,* p. 1576. It thus serves the same objective as the "newly discovered" requirement in Rule 60(b)(2).

Smith has offered no convincing policy reasons for rejecting the district court's view of the requirements of the "substantially different" evidence exception to the law of the case, and we cannot discern any. To the contrary, we think that the district court's interpretation of that exception furthers the underlying purpose of the law-of-the-case doctrine. In this case, Smith is seeking to reopen factual issues finally laid to rest by the Ninth Circuit in 1982 on the basis of evidence it could have discovered with due diligence at least by the time of trial of this case in 1977. The district court was fully justified in rejecting this attempt.

### C. Reexamination of the Ninth Circuit Decision.

One of the grounds upon which the district court initially invalidated the '928 patent was that the patent had been anticipated by the Turner patent covering a drilling bit and therefore was invalid under 35 U.S.C. § 102. In *Smith I,* the Ninth Circuit set aside the district court's ruling of anticipation because Smith had not met its burden of proving invalidity on that ground. Smith now argues that that ruling of the Ninth Circuit was "clearly erroneous" and "would work a manifest injustice," and that therefore that decision comes within the exception to the law of the case covering that situation. Its argument turns on complex factual assertions, which Hughes strongly disputes.

■ "The standard under this exception is a stringent one" and requires " '[a] strong showing of clear error' " that "convince[s]" the court that the "prior decision was incorrect." *Northern Helex,* 634 F.2d at 562. Without going into the details of this factual issue, it suffices to say that Smith has not made the "strong showing of

clear error" necessary before we should disregard the decision of the Ninth Circuit.

## IV

■ Smith also argues that Hughes committed fraud on the courts by "attempting to conceal [its] misrepresentations and omissions from all litigants and the courts" on three separate occasions: (1) before the district court and the Ninth Circuit during the liability phase of this case; (2) before the United States District Court for the Northern District of Texas in a patent infringement suit Hughes filed against Dresser Industries, Inc.; and (3) before the district court during proceedings on the motions here on appeal.

The substance of the first two allegations is that Hughes falsely represented to the court (i) that affidavits Mr. Galle, the inventor of the '928 patent, filed in the Patent and Trademark Office were accurate, and (ii) that consequently there was no inequitable conduct before that Office. They are essentially the same allegations Smith relies on for its fraud and inequitable conduct arguments. We have held that the district court properly rejected this evidence as a ground for modifying the preliminary injunction because the evidence was cumulative or could have been discovered long ago through due diligence. Smith has not convinced us that this same conduct constituted fraud on the courts.

On the third occasion, Mr. Galle is alleged to have given false testimony concerning the circumstances surrounding the affidavits. The district court, however, had before it at that time all the evidence now before this court, and therefore was fully capable of determining whether Mr. Galle's statements were false. Smith has not shown that Hughes committed fraud on the court on that occasion.

## V

Two other issues in the case require only brief comment.

A. In July 1984, after the docketing of the appeal in No. 84–1094 but prior to the order of the district court that is the subject of the appeal in 84–1767, Smith filed with us a motion to remand the case to the district court to consider "recently uncovered evidence of fraud and inequitable conduct." The court remanded that motion to the merits panel "for determination along with the main appeal."

In view of our disposition of these appeals, the motion to remand is denied as moot.

■ B. Hughes has argued that Smith's appeals are frivolous and based on misstatements of the record and that we should therefore award Hughes its attorney fees incurred in litigating the appeal. Although we have rejected Smith's contentions, we cannot say its appeals are either frivolous or based upon misstatements of the record. Accordingly, we deny Hughes' request to award it attorney fees.

## VI

Because of the protracted nature of this case and the course of its proceedings, we think it appropriate to aid the district court and counsel by indicating what issues are still open and what issues have been definitively decided.

The only questions still undecided are those relating to remedy, namely, the determination of damages and the issuance of any permanent injunctive relief that the district court deems appropriate. All issues with respect to (1) the validity and enforceability of the '928 patent, including Hughes' alleged fraud or inequitable conduct that would make the patents unenforceable, and (2) the fact of infringement, have been resolved in favor of Hughes. The extent of infringement, as distinguished from the fact, is a matter for the district court to decide in determining damages and the scope of any injunctive relief. Nothing in this opinion is intended to suggest any views on the question now before the district court whether Smith infringed the '928 patent in manufacturing new de-

vices covered by Smith's U.S. Patent No. 4,372,629.

The orders of the district court are affirmed insofar as they denied Smith's motions to dissolve the preliminary injunction. The appeals are dismissed insofar as they seek review of the portions of the orders of the district court that (1) barred Smith from introducing in the relief phase of the case any evidence relating to Hughes' alleged fraud on the Patent Office or alleged inequitable conduct that would render the patents unenforceable, and (2) denied partial summary judgment in favor of Smith and refused to order a separate trial.

AFFIRMED IN PART and DISMISSED IN PART.